[No. 9772–2–III.   Division Three.   May 10, 1990.]

PACIFIC SECURITY COMPANIES, *Respondent,* v. TANGLEWOOD, INC., ET AL, *Petitioners.*

*Howard Herman, Herman & Herman,* and *James R. Dunkley,* for petitioners.

*Peter Witherspoon* and *Workland, Witherspoon & Riherd,* for respondent.

MUNSON, C.J.—Tanglewood Enterprises, Inc., and its owners James Reed and Grace Y. Dunkley (Dunkleys), moved for relief from a decree of foreclosure entered against them in favor of Pacific Security Companies. They claimed it was no longer equitable for the decree to be enforced because of changes in circumstances since the decree was entered. The trial court found the relief sought by the Dunkleys was not available to them by motion for postjudgment relief, CR 60(b)(6), and denied the motion without prejudice to the Dunkleys' right to commence a separate action. We reverse.

The Dunkleys purchased 360 acres of property under a real estate contract with Mrs. Jean Johns in the late 1970's. In 1981 they sold the Johns property to Rega Properties, Ltd., as part of a 450–acre parcel conveyed under a real estate contract for $765,000.

In 1982 the Dunkleys borrowed $157,000 from Pacific, giving their buyers' interest in the contract with Mrs. Johns and their sellers' interest in the contract with Rega as security for the loan. By September 1984, all but 340 acres had been released to Rega under the terms of their contract. Rega defaulted on its 1984 contract payment to the Dunkleys, and as a result the Dunkleys were unable to make a required payment to either Mrs. Johns or Pacific.

The Dunkleys sued Rega and its officers and shareholders for breach of contract. Rega filed bankruptcy, and Rega was allowed to reject its contract with the Dunkleys. The bankruptcy court valued the 340 acres at $600,000 subject to the rejected contract.

Pacific filed a complaint to foreclose its mortgage on the Dunkleys' interest in the 340 acres because of their failure to make required loan payments. Pacific also alleged the Dunkleys had failed to make payments due to Mrs. Johns, and as a result Pacific had paid her $22,237.14 to protect its security interest. On October 10, 1986, a decree of foreclosure was entered, awarding Pacific a judgment of $318,334.78,[1] ordering a sheriff's sale of the subject property and providing for entry of a judgment against the Dunkleys for any deficiency remaining after applying proceeds of the sale.

Pacific bid $245,244 at the sheriff's sale. The Dunkleys objected to confirmation of the sale, and a hearing was scheduled to fix a minimum upset price. Before the sale was confirmed, however, Pacific purchased Mrs. Johns' interest in the property for $137,652.84 on June 3, 1988. Pacific then withdrew its bid and withdrew its motion for confirmation of the sheriff's sale.

On June 15, Pacific gave the Dunkleys notice of its intent to forfeit their interest in the property for failure to make the 1988 installment payment required under the Dunkleys' contract with Mrs. Johns. Pacific issued a declaration of forfeiture to the Dunkleys on September 19.

The Dunkleys moved for an order extinguishing all liens on the property and discharging their debts to Mrs. Johns and Pacific. Since Pacific had already acquired equitable title to the property by reason of its bid at the sheriff's sale, the Dunkleys argue their debt on the Johns' contract was extinguished under the doctrine of merger when Pacific purchased the legal title from Mrs. Johns. Consequently,

---

[1]This amount includes principal, interest at 21 percent, payments made by Pacific to Mrs. Johns, and attorney fees and costs.

the Dunkleys no longer had any obligation on the Johns' contract which could justify forfeiture. Since Pacific purchased Mrs. Johns' interest, the Dunkleys further argue their interest, if any, has been extinguished, as well as any obligation they owed to Pacific. Thus, not only was Pacific not entitled to a deficiency judgment, but the Dunkleys were entitled to recover the difference between their obligation to Pacific and the value of the land Pacific had acquired. They claim that value should be the value given in the Rega bankruptcy action, *i.e.*, $600,000.

Pacific opposed the motion, asserting Mrs. Johns and Pacific had executed a "nonmerger agreement" which prevented the occurrence of any merger and arguing that in any event, its bid having been withdrawn, the equitable interest still belonged to the Dunkleys and no merger could occur. Pacific also argued the court had no jurisdiction with respect to the relief sought and a separate civil action should have been commenced.

The trial court found relief should be sought in a separate action and the Dunkleys' motion was denied pursuant to CR 60(b)(6).

CR 60(b)(6) permits the court to "relieve a party or his legal representative from a final judgment, order, or proceeding [if] . . . it is no longer equitable that the judgment should have prospective application". This provision allows the trial court to address problems arising under a judgment that has continuing effect "where a change in circumstances after the judgment is rendered makes it inequitable to enforce the judgment." *Metropolitan Park Dist. v. Griffith*, 106 Wn.2d 425, 438, 723 P.2d 1093 (1986). The rule applies primarily to injunctions and judgments other than those for money damages. *United States v. American Nat'l Bank & Trust Co.*, 101 F.R.D. 770 (N.D. Ill. 1984).

■ The court has the inherent right in equity to modify an injunction when changed circumstances render the injunction an instrument of wrong. *Lubben v. Selective Serv. Sys. Local Bd. 27*, 453 F.2d 645, 651, 14 A.L.R. Fed. 298 (1st Cir. 1972); *see System Fed'n 91, Ry. Employees'*

*Dep't v. Wright,* 364 U.S. 642, 5 L. Ed. 2d 349, 81 S. Ct. 368 (1961). The court has a similar inherent power to supervise the execution of judgments, particularly those involving the sale of property, to prevent an inequitable result. *See Bavarian Properties, Ltd. v. Ross,* 104 Wn.2d 73, 76, 700 P.2d 1161 (1985); *Miebach v. Colasurdo,* 102 Wn.2d 170, 177, 685 P.2d 1074 (1984); *Paglia v. Breskovich,* 11 Wn. App. 142, 144–45, 522 P.2d 511, *review denied,* 84 Wn.2d 1004 (1974). Indeed, confirmation by the trial court is an essential element of an execution sale. *In re Marriage of Davies,* 48 Wn. App. 29, 32, 737 P.2d 721 (1987); *Ferry Cy. Title & Escrow Co. v. Fogle's Garage, Inc.,* 4 Wn. App. 874, 880, 484 P.2d 458, *review denied,* 79 Wn.2d 1007 (1971). A judgment ordering a sheriff's sale and authorizing a deficiency judgment following completion of the sale has prospective application, and the court's inherent power to ensure an equitable result may be invoked by a CR 60(b)(6) motion.

The Dunkleys argued Pacific's purchase of legal title to the property which was the subject of the foreclosure order was a change in circumstances which rendered enforcement of the judgment inequitable. Their motion was proper under CR 60(b)(6).

We reverse and remand to the trial court for resolution of the substantive issues presented.

GREEN and THOMPSON, JJ., concur.