IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| TODD and THERESA BAKER, husband and wife, | No. 47395-0-II |
| Appellants, | |
| v. | |
| NORTHWEST TRUSTEE SERVICES, INC., PENNYMAC LOAN SERVICES, LLC, | UNPUBLISHED OPINION |
| Respondents. | |

WORSWICK, P.J. — In 2011, Todd and Theresa Baker filed suit to stay the foreclosure of their real property and to obtain a declaratory judgment that their loan was properly rescinded three years prior. The superior court granted summary judgment against the Bakers. The Bakers did not appeal then, but in 2015, filed a CR 60(b) motion, seeking relief from the summary judgment dismissal. The superior court denied their motion. The Bakers now appeal the denial of their CR 60(b) motion, arguing that it would be inequitable to apply the judgment prospectively given the Supreme Court's decision in *Jesinoski v. Countrywide Home Loans, Inc.*, ___ U.S. ___, 135 S. Ct. 790, 190 L. Ed. 2d 650 (2015), and that extraordinary circumstances exist. We disagree and affirm.

FACTS

I. BRIEF HISTORY OF TRUTH IN LENDING ACT

The Truth in Lending Act (TILA) is a consumer protection law intended to guarantee a meaningful disclosure of credit terms at the time a loan is executed. 15 U.S.C §§ 1601-1667f. A borrower generally has a three-day right to rescind after the closing of a loan transaction,

however if any of the material disclosures are omitted, the three-day rescission period is extended to three years. 15 U.S.C. § 1635. Until January 2015, federal circuit courts were split regarding what actions by borrowers were required to properly exercise their rights to rescission. The Ninth Circuit considered a suit time-barred if a borrower did not commence a lawsuit to enforce rescission within three years, even if they had submitted notice of rescission within the three year time period. *McOmie-Gray v. Bank of America*, 667 F.3d 1325, 1326 (9th Cir. 2012). In January 2015, the Supreme Court of the United States resolved the circuit split in *Jesinoski*, 135 S. Ct. at 793, holding that under TILA, rescission is effected when a borrower notifies the creditor in writing of his intention to rescind within three years after the transaction is consummated. The Court explained that such a notification constitutes a valid rescission as there is no requirement that a borrower sue within three years or that the rescission be accompanied by the borrower's tender.

## II. PROCEDURAL HISTORY

On May 31, 2006, the Bakers refinanced their mortgage. On May 28, 2009, the Bakers signed and mailed Notice of Right to Cancel forms to MorEquity, the loan servicer at the time, indicating that they were rescinding the loans. MorEquity refused to recognize the rescission. In mid-2009, PennyMac took over servicing responsibilities on the Bakers' loans. In September 2009, the Bakers informed PennyMac that they had previously rescinded the loans.

On September 27, 2010, PennyMac sent the Bakers a notice of default informing the Bakers they were in default for failure to pay their monthly mortgage payments. PennyMac

recorded a Notice of Trustee's Sale, indicating the sale would take place on March 18, 2011. Northwest Trustee Services, Inc. (NWTS) is the trustee for the nonjudicial foreclosure.

On April 8, 2011, the Bakers filed suit against PennyMac and NWTS for an injunction to stay the foreclosure and a declaratory judgment that the loan was properly rescinded on May 28, 2009, among other relief not at issue here. On May 13, 2011, the superior court granted the Bakers' motion for a preliminary injunction to restrain the trustee's sale pending the outcome of the suit. On July 12, 2012, PennyMac and NWTS filed motions for summary judgment arguing in relevant part that the Bakers' rescission was invalid because the lawsuit was not commenced within three years of consummation of the loan transaction, as required by the Ninth Circuit Court of Appeals' interpretation of TILA's three year time period for rescission,[1] and the Bakers were unable to tender funds to repay the loans at issue.

The superior court granted the motions for summary judgment based on the following specific grounds: (1) the Bakers' failure to file the lawsuit to rescind their mortgage loan within three years of consummation of the loan, (2) the Bakers' failure to allege facts or disputed facts which would establish their claim, and (3) the Bakers' failure to establish they could tender the proceeds of the loan. The Bakers did not appeal the summary dismissal of their suit.

On January 13, 2015, the United States Supreme Court decided *Jesinoski*, resolving the circuit split. 135 S. Ct. at 793. On February 11, 2015, the Bakers filed a motion for relief pursuant to CR 60(b)(6) and (b)(11), asking the superior court to vacate its prior order and judgment and reopen the case. The superior court denied their motion, concluding that a

---

[1] *McOmie-Gray*, 667 F.3d at 1325.

subsequent change in law did not provide the basis for relief from a final judgment in the absence of extraordinary circumstances. The property was sold at a trustee's sale on June 26, 2015.[2]

ANALYSIS

"A trial court's denial of a motion to vacate under CR 60(b) will not be overturned on appeal unless the court manifestly abused its discretion." *Haley v. Highland*, 142 Wn.2d 135, 156, 12 P.3d 119 (2000). "Errors of law are not correctable through CR 60(b); rather, direct appeal is the proper means of remedying legal errors." *State v. Keller*, 32 Wn. App. 135, 140, 647 P.2d 35 (1982). Our review of a CR 60(b) decision is limited to the trial court's decision, not the underlying order the party seeks to vacate. *See Bjurstrom v. Campbell*, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1986). A trial court abuses its discretion when its decision is based on untenable grounds or reasoning. *Tamosaitis v. Bechtel Nat'l, Inc.*, 182 Wn. App. 241, 254, 327 P.3d 1309 (2014).

I. CR 60(b)(6)

The Bakers first argue that the superior court abused its discretion by denying the Bakers' relief from judgment pursuant to CR 60(b)(6) because it is no longer equitable that the superior court's order granting summary judgment dismissal should have prospective application. We disagree.

---

[2] We granted PennyMac's motion to submit new evidence of this fact.

As an initial matter, the superior court did not specifically articulate its reasoning for denying the Bakers' motion for relief based CR 60(b)(6). Rather, the superior court issued its order denying the CR 60 motion generally, and enclosed a letter to the parties explaining "subsequent change in law does not provide the basis for relief from a final judgment in the absence of extraordinary circumstances. It is my conclusion [the Bakers] have not established extraordinary circumstances warranting relief from the judgment." Clerk's Papers at 160. Although the superior court did not state its grounds for denying CR 60 relief pursuant to CR 60(b)(6) specifically, "an appellate court may sustain a trial court on any correct ground, even though that ground was not considered by the trial court." *Nast v. Michels*, 107 Wn.2d 300, 308, 730 P.2d 54 (1986); *see also State v. Costich*, 152 Wn.2d 463, 477, 98 P.3d 795 (2004).

CR 60(b) provides in part:

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons:

. . . .

(6) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or *it is no longer equitable that the judgment should have prospective application*.

This provision allows the trial court to address problems arising under a judgment that has continuing effect "'where a change in circumstances after the judgment is rendered makes it inequitable to enforce the judgment.'" *Pacific Sec. Cos. v. Tanglewood, Inc.*, 57 Wn. App. 817, 820, 790 P.2d 643 (1990) (quoting *Metropolitan Park Dist. v. Griffith*, 106 Wn.2d 425, 438, 723 P.2d 1093 (1986)).

In order to succeed on their motion for relief pursuant to CR 60(b)(6), the Bakers must first meet the threshold requirement that the judgment at issue has prospective application. *Maraziti v. Thorpe*, 52 F.3d 252, 254 (9th Cir. 1995).[3] The Bakers cannot meet this burden. The standard used in determining whether a judgment has prospective application is whether it is executory or involves the supervision of changing conduct or conditions. *Maraziti*, 52 F.3d at 254. The order granting summary judgment against the Bakers is not that type of order.

The Bakers contend that the order has prospective application because it allowed the nonjudicial foreclosure to continue. The Bakers are correct that the order lifted the temporary injunction enjoining the nonjudicial foreclosure sale, thus allowing PennyMac to move forward with foreclosure. But the mere fact that the order had some future consequence does not mean it has prospective application. "'Virtually every court order causes at least some reverberations into the future, and has, in that literal sense, some prospective effect. . . . That a court's action has continuing consequences, however, does not necessarily mean that it has 'prospective application' for the purposes of Rule 60(b)(5).'" *Maraziti*, 52 F.3d at 254 (quoting *Twelve John Does v. Dist. of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988)).

The Bakers cite *Tanglewood*, 57 Wn. App. 817 to support their claim. However, *Tanglewood* is distinguishable. There, the superior court entered a judgment issuing a foreclosure decree, ordering a sheriff's sale of the property, and entering a judgment against the

---

[3] Washington cases addressing application of CR60 (b)(6) are few, however, federal courts have considered at length the nearly identical language in Fed. R. Civ. P. 60(b)(5). When reviewing similar court rules, Washington courts often look to federal decisions as persuasive authority. *See Chelan Cty. Deputy Sheriff's Ass'n v. Chelan Cty.*, 109 Wn.2d 282, 291, 745 P.2d 1 (1987).

debtors for any deficiency remaining after applying the proceeds of the sale. 57 Wn. App. at 819. At the sheriff's sale, the creditor purchased legal title to the property. 57 Wn. App. at 819. The debtors moved for CR 60(b)(6) relief from the prior deficiency judgment because the creditor had already acquired equitable title to the property, thus eliminating the debtors' continuing debts under the doctrine of merger. 57 Wn. App. at 819-20. Division Three of this court held that a judgment ordering a sheriff's sale and authorizing a deficiency judgment following completion of the sale has prospective application and the court's inherent power to ensure an equitable result may be invoked by a CR 60(b)(6) motion. 57 Wn. App. at 821.

Unlike *Tanglewood*, the underlying order in this case has no prospective application. The summary judgment dismissal of the Bakers' claim did not impose any continuing obligation on the Bakers such as the deficiency judgment in *Tanglewood*. Nor did the dismissal order an execution sale required to be supervised or confirmed by the superior court. Rather, the underlying order from which the Bakers seek relief was nothing more than an unconditional dismissal of their claims. The Bakers could have appealed the order but chose not to. The fact that their decision not to appeal had some future consequence does not mean it had prospective application as required for CR 60(b)(6) relief. *See Twelve John Does*, 841 F.2d at 1139 (D.C. Cir.1988) ("it is difficult to see how an unconditional dismissal could ever have prospective application").

The Bakers also contend that the order granting summary judgment dismissal has prospective application because it may affect the Bakers' rights to challenge the legality of the foreclosure sale under the "Deeds of Trust Act." ch. 61 RCW. Any impact on potential future

litigation caused by the Bakers' decision not to appeal the order granting summary judgment does not constitute prospective application for purposes of CR 60(b)(6). As previously discussed, virtually every court order causes at least some reverberations into the future, but unless an order is executory or involves the supervision of changing conduct or conditions, it does not have prospective application. *Maraziti*, 52 F.3d at 254. The underlying order here was not executory nor did it involve any supervision of changing conduct. Any future impact would be caused by nothing more than the res judicata effect of an unappealed dismissal order and does not qualify the Bakers for CR 60(b)(6) relief.

Because the Bakers cannot show that the order granting summary judgment dismissal has prospective application, we reject the Bakers' claim for relief based on CR 60(b)6).

## II. CR 60(b)(11)

The Bakers next argue that the trial court abused its discretion by denying their motion for relief pursuant to CR 60(b)(11). Specifically, the Bakers contend that extraordinary circumstances existed warranting relief from the order granting summary judgment dismissal including: (1) the United States Supreme Court's decision in *Jesinoski*, (2) PennyMac is not a proper party to the judgment, (3) finality is not affected because the nonjudicial foreclosure is still subject to challenge, and (4) relief from judgment will serve the ends of justice. Again, we disagree.

CR 60(b)(11) grants the court discretion to vacate an order for "any other reason justifying relief from the operation of the judgment." *Barr v. MacGugan*, 119 Wn. App. 43, 45-46, 78 P.3d 660 (2003). Despite its broad language, the use of CR 60(b)(11) should be reserved

for situations involving extraordinary circumstances not covered by any other section of CR 60(b). *In re Marriage of Furrow*, 115 Wn. App. 661, 673, 63 P.3d 821 (2003). Those extraordinary circumstances must relate to "'irregularities extraneous to the action of the court or questions concerning the regularity of the court's proceedings.'" 115 Wn. App. at 673-74 (quoting *In re Marriage of Yearout*, 41 Wn. App. 897, 902, 707 P.2d 1367 (1985)). Errors of law do not justify vacating an order under CR 60(b)(11). *Furrow*, 115 Wn. App. at 674.

In rare circumstances, a change in the law may create extraordinary circumstances, satisfying CR 60(b)(11). *In re Det. of Ward*, 125 Wn. App. 374, 380, 104 P.3d 751 (2005). For example, Washington courts have recognized the federal enactment of the Uniformed Services Former Spouses Protection Act[4] (USFSPA) as a change in law constituting an extraordinary circumstance warranting CR 60(b)(11) relief. *See Flannagan v. Flannagan*, 42 Wn. App. 214, 709 P.2d 1247 (1985).

The Bakers claim that the Supreme Court's decision in *Jesinoski* constitutes an extraordinary circumstance.[5] We disagree because *Flannagan* is distinguishable from the facts of this case and does not logically extend to the Bakers' claim.

---

[4] 10 U.S.C. § 1408.

[5] The Bakers encourage us to analyze whether the change in law constitutes an extraordinary circumstance by applying the multifactor analysis set forth in *Phelps v. Alameida*, 569 F.3d 1120, 1135 (9th Cir. 2009). However, the Bakers provide no authority for why we should rely on a federal circuit court case to guide its analysis rather than established Washington case law. Furthermore, *Phelps* addressed a motion for relief in the habeas context, the facts of which are starkly different. We decline to apply the *Phelps* analysis.

No. 47395-0-II

By way of brief background, in 1981, the United States Supreme Court issued *McCarty v. McCarty*, 453 U.S. 210, 235 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981), holding that federal law prohibited state courts from dividing military retirement pay pursuant to community property laws, as had been the practice in Washington. Immediately, and in direct response, Congress passed the USFSPA which permitted state courts to treat military retired pay payable for periods after June 25, 1981,[6] as community property. *Flannagan*, 42 Wn. App. at 215-16. Subsequently, the Washington Supreme Court held that Congress specifically intended the statute to be retroactively applied. *See In Re Marriage of Konzen*, 103 Wn.2d 470, 473-74, 693 P.2d 97, *cert. denied*, 473 U.S. 906, 105 S. Ct. 3530, 87 L. Ed. 2d 654 (1985).

We held that final dissolution decrees issued during the "McCarty period" could be reopened under CR 60(b)(11). *Flannagan*, 42 Wn. App. at 218. In *Flannagan*, we emphasized "the importance of finality and the limited nature of our deviation from the doctrine." 42 Wn. App. at 218. We then identified the four extraordinary circumstances warranting CR 60(b)(11) relief in that case:

> [F]irst, the clear congressional desire of removing all ill effects of *McCarty*; second, the alacrity with which the Congress moved in passing the USFSPA; third, the anomaly of allowing division of the military retirement pay before *McCarty* and after USFSPA, but not during the 20-month period in between; and fourth, the limited number of decrees that were final and not appealed during that period.
> . . . .
> We emphasize the limited nature of this exception. Allowing reopening in these cases will not provide a springboard for attacks on other final judgments.

42 Wn. App. at 222.

---

[6] The date of the *McCarty* opinion.

10

This case is unlike the cases allowing CR 60(b)(11) relief to decrees that were final during the *McCarty* period. Those cases responded to an act of Congress with the clear intent to retroactively apply USFSPA. Here, the change in law upon which the Bakers base their claim is nothing more than an opinion resolving a circuit split. The circuit split existed at the time the superior court ordered summary judgment. The Bakers could have appealed the superior court's interpretation of the time limit for rescission under TILA, arguing it used the incorrect interpretation, but they chose not to. Furthermore, allowing relief in a case because a later court decision alters or overrules precedent previously relied upon would have the exact effect warned about in *Flannagan*: allowing broad use of CR 60(b)(11) to provide a springboard for attacks on other final judgments. 42 Wn. App. at 222.

The Bakers also argue that "extraordinary circumstances exist because PennyMac did not obtain a judgment in its favor as the proper and correct party to the proceeding brought by the Bakers." Br. of Appellant 16. However, the Bakers named PennyMac in their complaint and alleged numerous wrongdoings by PennyMac. PennyMac defended itself against these claims and the superior court granted summary judgment in PennyMac's favor, awarding fees and funds held in the court registry to PennyMac. It appears that the Bakers now take issue with PennyMac's ability to enforce the Bakers' loan it was servicing.

The Bakers filed their lawsuit against PennyMac and made no additional attempt to amend the suit to include any additional party. If the Bakers believed that the trial court's entry of judgment in favor of PennyMac was an error of law, their remedy was to appeal the trial court's ruling. *Bjurstrom*, 27 Wn. App. at 451 ("The exclusive procedure to attack an allegedly

defective judgment is by appeal from the judgment, not by appeal from a denial of a CR 60(b) motion."). The Bakers offer no authority suggesting these vague allegations constitute an extraordinary circumstance warranting relief under CR 60(b)(11), and we hold that it does not.

The Bakers next argue that extraordinary circumstances exist because "relief from judgment under CR 60(b)(11) . . . would not offend the principles of finality" because the nonjudicial foreclosure has not been completed and the parties are in the same position as they were when the judgment was entered. Br. of Appellant 18. This argument is incorrect. The foreclosure sale has been completed.[7]

Washington courts emphasize the value of finality in judgments. "It must be remembered that one of the most important services the courts provide is to bring legal disputes to an end." *Genie Indus., Inc. v. Mkt. Transp., Ltd.*, 138 Wn. App. 694, 715, 158 P.3d 1217 (2007). The *Flannagan* court placed great weight on the importance of finality, cautioning that reopening a final judgment must only be done in truly extraordinary circumstances. "We believe the doctrine of finality of judgments is of great importance, and must be considered in any analysis of the retroactive application to final decrees. . . . [W]e emphasize the importance of finality and the limited nature of our deviation from the doctrine." *Flannagan*, 42 Wn. App. at 218 (1985) (footnote omitted). Here, the order granting summary judgment was clearly a final judgment subject to appeal. The Bakers chose not to appeal. PennyMac, NWTS, and the third party

---

[7] The Bakers also argue that because the proper owner of the loan is incapable of being identified, any foreclosure of the property is invalid. The Bakers offer no authority as to how this constitutes an extraordinary circumstance. Rather, they cite federal circuit court cases in which relief was granted before the underlying judgment became final.

purchasers of the property at the foreclosure sale have all proceeded in reliance on the finality of the order and we will not disturb that finality now.

Finally, the Bakers argue that CR 60(b)(11) relief would "serve[] the ends of justice." Br. of Appellant 19. However, the general equity of the superior court's denial of the Bakers' motion does not establish an extraordinary circumstance warranting relief. CR 60(b)(11) relief is reserved only for situations involving extraordinary circumstances. *Furrow*, 115 Wn. App. at 673. The superior court concluded that the Bakers have not established any extraordinary circumstances warranting relief. For the reasons discussed above, we hold that the trial court's conclusion was not an abuse of discretion.

## ATTORNEY FEES

The Bakers argue that they are entitled to recover attorney fees and costs under the TILA, which allows for the recovery of fees in the case of a successful action. 15 U.S.C. § 1640(a)(3). The Bakers' claim for relief fails. Thus, no award of attorney fees is justified under the terms of 15 U.S.C. § 1640(a)(3).

NWTS also seeks costs under RAP 14.2 and RAP 18.1(b). As NWTS is a prevailing party, we grant its request.

In conclusion, we hold that the trial court did not abuse its discretion by denying the Bakers' CR 60(b) motion for relief because the Bakers cannot show that the order granting summary judgment dismissal against the Bakers has any prospective application or that any extraordinary circumstances exist warranting relief; we reject the Bakers' claims. Accordingly,

No. 47395-0-II

we affirm the superior court's denial of the Bakers' CR 60(b) motion for relief and award costs to NWTS pursuant to RAP 14.2 and RAP 18.1(b).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Lee, J.

_____
Melnick, J.

14