**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In the Matter of the Estate of | No. 79912-6-I |
| JOHN J. BELARDE, | |
| Deceased. | DIVISION ONE |
| STEVE BELARDE, an individual, | |
| Respondent, | |
| v. | |
| JOHN F. BELARDE, personal representative and trustee, | UNPUBLISHED OPINION |
| Appellant. | |

MANN, C.J. — John F. Belarde, as personal representative and trustee of the estate of his father John J. Belarde, appeals the trial court's order vacating a prior order dismissing a petition filed under the Trust and Estate Dispute Resolution Act (TEDRA), ch. 11.96 RCW, by his brother, Steve Belarde.[1]  John contends that the trial court erred when it relied on CR 60(b)(3) to vacate the TEDRA dismissal because Steve's expert declaration was not based on newly discovered evidence.  We agree and reverse.

_____

[1] Because the parties to this appeal all have the same last name, we use first names and refer to John J. Belarde as John Sr. and John F. Belarde as John.  No disrespect is intended.

Citations and pin cites are based on the Westlaw online version of the cited material.

I.

John J. Belarde and Rosemary Belarde had three children: John F. Belarde, Steve Belarde, and LeeAnn Belarde. In July 2014, John Sr. appointed John to be his attorney-in-fact under a general durable power of attorney and successor trustee to the John and Rosemary Belarde Revocable Living Trust (Trust). The sole member of the Trust is Belarde Holdings LLC, which John Sr. established in 2011. John Sr.'s residence and two properties in Alaska were in the Trust. John Sr. was also the single member of a limited liability corporation (LLC) that owned a commercial property in Woodinville, Washington. In 2012, John Sr.'s ownership interest in the LLC was transferred to the Trust. In January 2015, John Sr. was found to be incapacitated.

In December 2015, Steve and LeeAnn asked John to provide them with an "accounting of [their] father's assets, and [John's] use thereof on his behalf as attorney-in-fact." Steve and LeeAnn cited former RCW 11.94.090,[2] which allows a court to compel the attorney-in-fact to submit the attorney-in-fact's accounts. In February 2016, John's attorney, responded to Steve and LeeAnn providing bank records, medical records, financial account statements, a report about their father's care, canceled checks, and profit and loss statements of Belarde Holdings LLC. The letter included information about the property in Woodinville, which had been listed for sale for $1,600,000, and information about a reverse mortgage that John Sr. had taken on his home in 2010. At some point, John personally received $195,000, which the parties refer to interchangeably as both a loan and gift.

---

[2] Former RCW 11.94.090 provided that "any other interested person, as long as the person demonstrates to the court's satisfaction that the person is interested in the welfare of the principal and has a good faith belief that the court's intervention is necessary, and that the principal is incapacitated at the time of the filing." Former RCW 11.94.100 (2008).

In response to this information, Steve filed a TEDRA petition in July 2016, seeking an accounting of the sale of the commercial property for $1,500,000, and for John's removal as attorney-in-fact for John Sr. The trial court dismissed the petition with prejudice after determining Steve did not have a statutory right to the information under RCW 11.98.072(4)[3] because at the time, John Sr. was still alive. The trial court also determined that because Steve was not a member of the LLC, he lacked standing to request information about the LLC under RCW 25.15.136.[4] The court noted that it was "not making any findings as to the adequacy of the accounting except as to the sale of the property."

John Sr. passed away on August 7, 2017.[5] In October 2017, the court opened probate for the estate. The court appointed John as personal representative of the estate with nonintervention powers on November 15, 2017.[6] At Steve's request, John provided an inventory of the estate and additional financial information. Steve expressed concerns to John about several matters, including:

> What John did with the $1.372 million in proceeds from the $1.5 million commercial property sale.

> What John did with the tenants' monthly rent payments from the commercial property before selling it.

> Whether the $195,000 transaction between John Sr. and John was a gift or a loan.

> What happened to personal property, including the sale proceeds from a pickup truck.

---

[3] RCW 11.98.072(4) provides: "While the trustor of a revocable trust is living, no beneficiary other than the trustor is entitled to receive any information under this section."

[4] RCW 25.15.136 provides that members of an LLC may inspect records of the LLC.

[5] There is the following discrepancy in the record: Clerk's papers page 42 suggests that John Sr. passed away on August 7, 2017, while clerk's papers page 2 suggests that John Sr. passed away on August 8, 2017.

[6] The probate documents are not in the record, but the parties have not disputed these facts.

Whether John should provide a summary accounting of his activities.

John's attorney responded with assurances that "the accounting . . . is still coming," that they "had no intention of having [Steve] produce his own accounting," and "hoped [the documents produced] would increase [Steve's] comfort level that nothing is being hidden." Steve's attorney clarified that he expected two accountings from John, one as the personal representative of the estate and the other as attorney-in-fact. John's attorney conveyed that "[w]e are working on bring[ing] the accountings up to date" and that John would provide "[a]n accounting as the Attorney-in-fact, as Trustee of the Trust, and as [personal representative] of the estate."

On March 26, 2018, John served a creditor's claim against the estate. When Steve requested further information from John about his creditor's claim, John declined to provide more information about it until he finished administering the estate. On April 11, 2018, John provided an accounting for his service as an attorney-in-fact and explained that "[t]he accounting of the trust is still not complete, but we are working on it next week." On April 23, 2018, Steve asked when he could "expect to receive the accounting and claim explanation." John responded, that "[t]he accounting is complete, except for several missing statements which I recently [received] and will put into the same format and forward." John also explained that he did not address the creditor's claim in detail because "it is a part of the probate and the probate accounting arrives at the end." Steve responded to John that he had not "provide[d] the information . . . requested."

The financial information provided by John included raw financial documents and data, bank statements, receipts, check registers, copies of checks, and income and

property tax.  John explained that he sent this information "as is" to satisfy Steve's request to quickly produce records.  Steve contends that he was unable to understand an overall picture of John's activities as personal representative and attorney-in-fact for the Trust.  On May 1, 2018, John provided the missing account statements and completed the Trust accounting.  At that point, John had provided Steve with over 1,600 pages of documents.

On May 10, 2018, John sent a proposed plan for distributing the estate's personal property and disposing of its real estate to Steve.  Steve did not believe he had enough information about the estate's finances to make an informed decision about John's proposed plan.  Steve did not respond to John's plan and on June 1, 2018, filed a TEDRA petition, seeking an accounting under RCW 11.48.010, .030,.060 and RCW 11.96A.150.  Steve alleged that John had refused to provide him with "full and proper accounting[s]" and sought "to compel adequate and complete accountings and for [the] basis of unliquidated creditor claim [made] by [John]."  Steve requested specifics about (1) a $195,000 transfer to John while acting as attorney-in-fact for John Sr., (2) seven bank accounts whose purpose and transactions were not clear, (3) large withdrawals of $12,000 and $76,300 from the Trust savings account, (4) the statuses of the two properties in Alaska and John Sr.'s former home, (5) the reverse mortgage taken on the John Sr.'s former home, and (6) a Lincoln car.

John opposed the petition and submitted an expert opinion by Roger Jones, a Certified Public Accountant (CPA), stating that "the documents provided [by John] qualify as an Accounting and . . . meet the standards of a fiduciary accounting."  John's expert also explained that "there are so few transactions that providing more formalities

such as summaries of expense categories would not provide any additional information and, in this case, would be just an exercise of 'form over substance.'" John also submitted a declaration of another accountant conveying that probate needed to be open for another 6 to 12 months to prepare appropriate tax reports.

On June 28, 2018, a King County Superior Court commissioner dismissed Steve's TEDRA petition (TEDRA dismissal). The commissioner found that Steve had not provided an "adequate factual basis" to compel an accounting since John had provided accountings as attorney-in-fact and trustee. The commissioner also found that Steve "has not presented sufficient basis for the Court to order [the] release [of] information" because that "is a form of intervening in administration of the estate." In its oral ruling the commissioner suggested that Steve "needs to bring forth different evidence in order to overcome an expert—most likely needs to hire their own expert."

On November 15, 2018, Steve moved to compel adequate and complete accountings, for authority to conduct discovery, and to compel amendment of inventory. Steve later struck this motion after John objected that it was an untimely attempt to revise the TEDRA dismissal. John argued the dismissal was final because it was not appealed.

Steve then obtained two declarations from William C. Jaback, a CPA. Jaback reviewed the information provided by John and determined that he could not "decipher the economic transactions of the entities at issue." In his opinion, John had not provided a "full accounting" and his disclosures did "not meet community standards and [did] not comply with the requirements for accounting as described in RCW 11.96A.070." Jaback opined that what John had provided was "insufficient, not

reasonably comprehensible, and has failed to meet the fundamental objective of allowing the recipient to understand the financial transactions with a moderate amount of effort." Jaback concluded that John had disclosed "inadequate raw financial data to reconstruct the finances of the entities overseen by John." Jaback found a "large number of disbursements listed as 'unknown' in registers provided by [John]." On February 6, 2019, Steve moved to vacate the TEDRA dismissal alleging that John had committed fraud under CR 60(b)(4). John responded with his CPA's opinion that he had previously provided a full accounting. In Steve's reply, he asserted that newly discovered evidence under CR 60(b)(3) supported vacating the TEDRA dismissal.

On March 8, 2019, a different King County Superior Court commissioner denied Steve's motion to vacate, finding no basis to vacate the TEDRA dismissal under CR 60(b)(3) or (4).

Steve then moved for revision of the commissioner's order, arguing that Jaback's opinion was newly discovered evidence and that John had made factual misrepresentations about the accounting to the court.

On April 19, 2019, a King County Superior Court judge vacated the TEDRA dismissal based on CR 60(6)(3). The trial court did not address Steve's allegation that John committed fraud or misrepresentation under CR 60(b)(4). The vacation order remanded the matter to the ex parte probate department to consider the issues raised in Steve's motion to compel an accounting. John appealed.[7]

---

[7] When John filed this appeal, he also moved in this court for a stay of the proceeding that the superior court remanded to the trial court's ex parte probate department. A commissioner of this court granted the stay "[t]o the extent Steve is concerned about risk to the estate assets, any remedy does not include pursuing the same accounting that is the subject of the appeal." Steve filed a motion for clarification, seeking confirmation that Steve may seek relief under RCW 11.68.065, .070, and .110 in the

II.

"On appeal, a trial court's disposition of a motion to vacate will not be disturbed unless it clearly appears that it abused its discretion." Lindgren v. Lindgren, 58 Wn. App. 588, 595, 794 P.2d 526 (1990). A trial court abuses its discretion when its ruling is based on untenable grounds or for untenable reasons or when the discretionary act was manifestly unreasonable. Lindgren, 58 Wn. App. at 595.

"CR 60 is a limited procedural tool that governs relief from final judgments." Fireside Bank v. Askins, 195 Wn.2d 365, 375, 460 P.3d 157 (2020). "Relief may be sought on many bases, including mistakes, inadvertence, excusable neglect, newly discovered evidence, and fraud." Fireside Bank, 195 Wn.2d at 375. "The rule balances the principle of equity and finality." Fireside Bank, 195 Wn.2d at 375. "Fundamentally, a CR 60 proceeding is 'equitable in its character, administered upon equitable principles, and extended upon equitable terms.'" Fireside Bank, 195 Wn.2d at 375. "This is consistent with a court's 'inherent power to supervise the execution of judgments' that have prospective effect.'" Fireside Bank, 195 Wn.2d at 375.

A.

John first contends that the superior court erred because Jaback's expert declaration was not based on newly discovered evidence, and thus it was an abuse of discretion for the court to vacate the TEDRA dismissal under CR 60(b)(3). We agree.

CR 60(b)(3) states:

---

trial court. The commissioner denied the motion, stating that a new proceeding in the trial court would be "essentially seeking to pursue in the trial court relief similar to the relief that is the subject of the ongoing appeal."

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (3) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b).

"To justify vacating a judgment on the ground of newly discovered evidence, the moving party must establish that the evidence (1) would probably change the result if a new trial were granted, (2) was discovered since trial, (3) could not have been discovered before the trial by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching." Jones v. City of Seattle, 179 Wn.2d 322, 360, 314 P.3d 380 (2013). The "[f]ailure to satisfy any one of these five factors is a ground for denial of the motion." Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 88, 60 P.3d 1245 (2003).

Jaback's declaration was based on the same facts as John's expert; the only differences between the two excerpts was their conclusions. Indeed, Steve concedes that Jaback's declaration was based on facts that were known to him at the time of the June 2018 hearing. Steve instead argues that the superior court did not abuse its discretion in vacating the commissioner's order. But Steve cites no case that supports his contention that an expert opinion based on facts previously known to both parties is "newly discovered evidence" within the meaning used in CR 60(b)(3). In contrast, Washington courts have repeatedly held that "[a] new expert opinion, based on facts available to the trial experts, does not constitute newly discovered evidence." In re Pers. Restraint of Copland, 176 Wn. App. 432, 451, 309 P.3d 626 (2013) (citing State v.

Harper, Wn. App. 283, 293, 823 P.2d 1137 (1992)); In re Pers. Restraint of Walter William, 176 Wn. App. 432, 451, 309 P.3d 432 (2013).[8]

Steve also fails to show that he could not have discovered the facts before the June 2018 hearing with reasonable diligence. "A mere allegation of diligence is not sufficient; the moving party must state facts that explain why the evidence was not available for trial." Vance v. Offices of Thurston County Comm'rs, 117 Wn. App. 660, 671, 71 P.3d 680 (2003). Steve contends that an expert was not mandatory for his motion to compel an accounting. While an expert was not mandatory, once Steve knew that John had an expert declaration stating that the accounting was sufficient, a reasonable act of diligence would have been to consult an accounting expert about the sufficiency of the documents provided to him.

The superior court abused its discretion when it vacated the TEDRA dismissal based on CR 60(b)(3).

B.

Alternatively, Steve argues that this court can affirm on other grounds, citing CR 60(b)(4), CR 60(b)(6), and CR 60(b)(11). We disagree, but address each argument in turn.

Steve first contends that CR 60(b)(4) provides a basis to affirm because Jaback's declaration shows that John's expert misrepresented facts to the court. CR 60(b)(4) allows a trial court to vacate a judgment based on "[f]raud . . . , misrepresentation, or

---

[8] Steve argues that these cases were criminal proceedings addressing a motion for a new trial under CR 59. But the standard for assessing if evidence is "newly discovered" is the same in civil and criminal cases. Compare State v. Harper, 64 Wn. App. 283, 291, 823 P.2d 1137 (1992) with Jones, 179 Wn.2d at 360. See also Hill v. GTE Directory Sales Corp. 71 Wn. App. 132, 142, 856 P.2d 746 (1993) ("GTE provides no reason for granting a civil litigant a new trial when a criminal defendant would not be entitled to a new trial under identical circumstances.").

other misconduct of an adverse party." Steve argues that the expert opinion offered by John's CPA was a misrepresentation and misled the trial court.

Competing expert opinions cannot be the basis for fraud if the representation is clearly communicated as an opinion. Heigis v. Cepeda, 71 Wn. App. 626, 633, 862 P.2d 129 (1993). Steve's argument that the opinion was a misrepresentation fails because he has not presented clear and convincing evidence to support his argument that John's expert misrepresented facts to the court. Steve makes conclusory statements that, since he received voluminous documents, John's expert's statement must be false. Because the 1,660 pages of documents provided to Steve are not before this court, we cannot determine whether either expert made a factual misrepresentation to the trial court. CR 60(b)(4) does not provide a basis to vacate the June 2018 TEDRA dismissal.

Steve next alleges that, if the order dismissing his TEDRA petition has prospective effect, then CR 60(b)(6) provides a basis for this court to affirm. CR 60(b)(6) allows a judgment to be vacated when "it is no longer equitable that the judgment should have prospective application." The rule "allows the trial court to address problems arising under a judgment that has continuing effect 'where a change in circumstances after the judgment is rendered makes it inequitable to enforce the judgment.'" Pac. Sec. Co. v. Tanglewood, Inc., 57 Wn. App. 817, 820, 790 P.2d 643 (1990). "The rule applies primarily to injunctions and judgments other than those for money damages." Tanglewood, 57 Wn. App. at 820-21. This relief is typically granted for injunctions that have a continuing effect. Tanglewood, 57 Wn. App. at 821. In circumstances involving orders with continuing effect, the court's inherent power to

ensure an equitable result may be invoked by a CR 60(b)(6) motion. Tanglewood, 57 Wn. App. at 821.

Steve contends that he should be able to seek other non-monetary relief under the applicable statutes and that he has the right to annually file (1) a petition for an accounting of the trust under RCW 11.106.040, (2) the right to file an annual report of affairs under RCW 11.68.065, (3) and the right to petition under RCW 11.68.110 for a final accounting of the estate assets and proceeds. Steve contends that if his recourse under these statutes is barred, then the "dismissal will have become 'an instrument of wrong.'" But Steve has not established that the order has prospective application or bars future actions he may have under appropriate statutes. The TEDRA dismissal does not bar Steve from other relief available under the law. CR 60(b)(6) also does not provide a basis to vacate the TEDRA dismissal.

Finally, Steve asserts that CR 60(b)(11) is a catchall if the vacation does not fit within the other subsections of CR 60(b). CR 60(b)(11) allows a trial court to vacate a judgment for "[a]ny other reason justifying relief from the operation of the judgment." Contrary to Steve's assertion, however, the CR 60(b)(11) is "not a blanket provision authorizing reconsideration for all conceivable reasons." State v. Keller, 32 Wn. App. 135, 141, 647 P.2d 35 (1982). Instead, CR 60(b)(11) is confined to "extraordinary circumstances" and "must relate to 'irregularities which are extraneous to the action of the court or go to the question of the regularity of the proceedings.'" Keller, 32 Wn. App. at 141 (quoting Marie's Blue Cheese Dressing, Inc. v. Andre's Better Foods, Inc., 68 Wn.2d 756, 758, 415 P.2d 501 (1966)).

Steve points to no extraordinary circumstances, extraneous irregularities, or irregularities of the proceedings. Instead, he argues that neither John nor the estate would be burdened by responding to his requests. CR 60(b)(11) does not provide an independent basis for vacating the TEDRA dismissal.

III.

Both parties request attorney fees on appeal. RAP 18.1 authorizes this court to award attorney fees on appeal where authorized by law or court rule. RCW 11.96A.150(1) provides:

> any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings.

We award fees to John as the prevailing party to this appeal to be paid by Steve subject to compliance with RAP 18.1.

We reverse the trial court's order vacating the commissioner's June 2018 dismissal of Steve's TEDRA petition.

_Mann, C.J._

WE CONCUR:

_Andrus, A.C.J._          _Dwyer, J._

-13-