IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

FIRESIDE BANK fka FIRESIDE )
THRIFT CO., a California corporation, )  No. 34918-7-III
 )
    Appellant, )
 )
  v. )
 )  PUBLISHED OPINION
JOHN W. ASKINS and LISA D. )
ASKINS, husband and wife and their )
marital community comprised thereof, )
 )
    Respondents. )

   KORSMO, J. — Cavalry Investments appeals from a decision of the superior court

determining that violations of the Washington Collection Agency Act (CAA), ch. 19.16

RCW, needed to be remedied by stripping the debt to the principal and declaring the debt

paid. Concluding that an email communication between attorneys does not constitute a

violation of the CAA and that CR 60 was not a proper method of presenting the debtors'

theory of the case, we reverse and remand for further proceedings.

FACTS

   A used car loan bearing an interest rate of 18.95 percent issued in 2004 to

respondents John and Lisa Askins is the basis for this case. According to the Askins, the

car was returned in 2006, supposedly in satisfaction of the balance of the loan, and no

further loan payments were made. However, this transaction was not reduced to writing. Fireside Bank, the assignee on the loan note, asserted that it repossessed the vehicle in December 2006, and sold it the following month for $4,200.

Fireside then filed suit seeking the balance of the note. The Askins did not appear in the action and ultimately a default judgment was entered against them on September 28, 2007, in the amount of $7,754.39, plus prejudgment and postjudgment interest. Clerk's Papers (CP) at 13. After collecting some money from the Askins over the years via garnishment, Fireside in 2012 sold the note to appellant Cavalry Investments, a debt collection agency. The two creditors issued 19 writs of garnishment between 2008 and 2015. A total of $10,849.16 was collected by the writs.

With collection efforts against them continuing, the Askins obtained an attorney. Their attorney contacted Cavalry's counsel in November 2015, and requested an accounting. Three months later, the Askins' counsel asked Cavalry's attorney to enter a satisfaction of judgment. Cavalry's counsel did not agree that the judgment had been satisfied and sent an email to counsel on April 7, 2016, containing an amortization schedule explaining the balance still owed. Both the email and the amortization schedule bore the notice: "This is an attempt to collect a debt. Any information obtained will be used for that purpose." CP at 372. The schedule also reported that the remaining debt had been calculated by adding $643 in attorney fees and $280 or $285 in collection costs

for each writ of garnishment. The spreadsheet concluded that the Askins still owed $15,820.89.

The Askins then requested, and the court granted, a show cause hearing pursuant to CR 60 to determine that the debt had been paid. The hearing request also asked for additional relief, including: quashing the most recent writ of garnishment, entry of a satisfaction of judgment, return of all money paid in excess of the debt principal, finding a violation of the CAA for attempting to collect unlawful amounts, and awarding sanctions and damages. CP at 403. The motion relied on the schedule contained in the April 7 email between counsel.

The parties argued the matter before the Honorable David Frazier of the Whitman County Superior Court, the same judge who had signed the judgment nine years earlier. Cavalry argued that the April 7 email accounting had been erroneous and that the proper accounting showed that a balance remained. Judge Frazier considered the email accounting and found that the CAA had been violated by Cavalry requesting more costs than they were entitled to collect in violation of RCW 19.16.250(21). He ordered the judgment stripped to its principal pursuant to RCW 19.16.450 and declared the judgment satisfied. CP at 427.

Cavalry moved for reconsideration and argued, with two alternative accountings attached, that the debt remained unsatisfied and that the matter should be set for trial. The Askins argued that the original ruling was proper and that Fireside Bank also had

3

violated the CAA before Cavalry acquired the debt. Judge Frazier heard oral argument

on the motion and took the matter under advisement before subsequently entering an

order denying reconsideration. The order on reconsideration stated, in part, that the

court's original ruling was based on efforts to claim more in attorney fees and costs than

was legally permissible, and that the new accounting could not cure the earlier error. CP

at 462-63.

Cavalry timely appealed to this court. An amicus curiae, the Statewide Poverty

Action Network, filed a brief in support of the Askins. A panel heard oral argument of

the case.

## ANALYSIS

Cavalry's appeal presents us with two significant questions. First, was the

accounting contained in the email between the attorneys an effort to collect a debt under

the CAA? Second, could the Askins pursue violations of the CAA under the provisions

of CR 60? We first consider the relevant statutes before turning to the two questions

presented.

The CAA is a counterpart of the federal Fair Debt Collection Practices Act

(FDCPA), 15 U.S.C. §§ 1692-1692o, and constitutes our state's effort to regulate debt

collection practices by in-state and out-of-state collection agencies. *Panag v. Farmer's

Ins. Co. of Wash.*, 166 Wn.2d 27, 53, 204 P.3d 885 (2009). Those who make collection

efforts in this state must be licensed, RCW 19.16.110, and also must not violate a lengthy

4

list of prohibited debt collection practices. RCW 19.16.250. Violations of these two statutes are actionable under the Washington Consumer Protection Act (CPA), ch. 19.86 RCW. *See* RCW 19.16.440.

In addition, a violation of any of the practices prohibited by RCW 19.16.250 results in the creditor losing its right to collect any costs or interest, and limits collection to only the original judgment principal. RCW 19.16.450. Among the prohibited practices are efforts to attempt to collect "any sum other than allowable interest, collection costs or handling fees expressly authorized by statute." RCW 19.16.250(21).

Washington's garnishment statute authorizes the imposition of attorney fees and other allowable costs. RCW 6.27.090(2). The attorney fee was $250 at the onset of this litigation, but was raised to $300 in 2012. *See* LAWS OF 2012, ch. 159, § 2. In order to recover costs or attorney fees, the plaintiff must obtain a judgment specifying the amount recovered. *Watkins v. Peterson Enters., Inc.*, 137 Wn.2d 632, 647, 973 P.2d 1037 (1999).

With these understandings in mind, we turn to the questions presented by this appeal.

*April 7 Email between Counsel*

The initial order granting the Askins' motion was predicated in part on the incorrect figures used in the April 7 email between the two attorneys. To the extent that the trial court considered that accounting to constitute a violation of the CAA, it erred.

Communications between opposing attorneys do not constitute an effort to collect debt under the CAA.

The CAA defines "debtor" as "any person owing or alleged to owe a claim." RCW 19.16.100(7). Many of the prohibited practices involve improper communication practices between collection agencies and debtors. *E.g.*, RCW 19.16.250(8), (9), (11), (13), (14), (15), (16), (17), (18). A collection agency is prohibited from communicating directly with a debtor who is represented by counsel. RCW 19.16.250(12).

These provisions of the CAA prohibit collection agencies, including attorneys or other agents, from contacting the debtor. They simply do not apply to communications with a debtor's attorney. The federal courts have reached the same conclusion under the FDCPA. "The purpose of the FDCPA is to protect vulnerable and unsophisticated debtors from abuse, harassment, and deceptive collection practices." *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 938 (9th Cir. 2007). Similarly, the purpose of the CAA is to "ensure [collection agencies] deal fairly and honestly with alleged debtors." *Panag*, 166 Wn.2d at 54.

Neither act categorically excludes attorneys from its scope. *Paris v. Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1220 (W.D. Wash. 2011) ("The [CAA] does not exempt attorneys attempting to collect a debt owed to a third party . . . ."); *Heintz v. Jenkins*, 514 U.S. 291, 299, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995) ("[The FDCPA] applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that

6

activity consists of litigation."). However, the FDCPA's "purposes are not served by applying its strictures to communications sent only to a debtor's attorney." *Guerrero*, 499 F.3d at 938; *see also Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) ("Where an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior."). Thus, "when the debt collector ceases contact with the debtor, and instead communicates exclusively with an attorney hired to represent the debtor in the matter, the [FDCPA's] strictures no longer apply to those communications." *Guerrero*, 499 F.3d at 939.

We believe the *Guerrero* principle governs here. Accordingly, we conclude that a communication by a creditor's attorney to a debtor's attorney, even if in violation of a provision of the CAA, does not itself constitute a violation of the CAA. The communication may still be of evidentiary value in subsequent litigation, but it does not constitute a prohibited communication to a debtor.

The trial court appeared to rely heavily upon the email communication in its original ruling. Although we reverse for the reasons stated in the next section and remand for additional action, we expressly note that sending the amortization schedule to the Askins' attorney could not itself constitute a violation of the CAA. The schedule itself, though, may still be of some evidentiary value to the parties. We believe that any

future consideration of this communication will be consistent with the views expressed in this opinion.

*Use of CR 60 to Obtain Affirmative Relief*

The Askins brought the show cause hearing under CR 60 to establish a satisfaction of the judgment and other affirmative relief. We conclude that this was not a proper method of establishing a violation of the CAA.

CR 60 allows relief from judgment in several circumstances, including:

> (b)(6) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application.

We believe this provision probably was the one relied on in the request for relief, although the calendaring order simply stated "CR 60."

"'Rule 60(b) is available only to set aside a prior judgment or order; courts may not use Rule 60(b) to grant affirmative relief in addition to the relief contained in the prior order or judgment.'" *Geonerco, Inc. v. Grand Ridge Prop. IV, LLC*, 159 Wn. App. 536, 542, 248 P.3d 1047 (2011) (applying federal standard to CR 60(b) and quoting *Delay v. Gordon,* 475 F.3d 1039, 1044-45 (9th Cir. 2007)). The party seeking vacation of a judgment under CR 60(b) bears the burden of establishing entitlement to relief. *Puget Sound Med. Supply v. Dep't of Soc. & Health Servs.*, 156 Wn. App. 364, 373 n.9, 234 P.3d 246 (2010). The effect of vacating a judgment is that it "is of no force or effect

and the rights of the parties are left as though no such judgment had ever been entered."

*In re Estate of Couch*, 45 Wn. App. 631, 634, 726 P.2d 1007 (1986).

CR 60(b) allowed the Askins to establish that the judgment had been satisfied through their payments, but they did not directly attempt to do so. Instead, they sought to show a violation of the CAA, invoke the remedy of RCW 19.16.450, and, once applying that remedy, claim that the judgment was satisfied. While this novel approach had the benefit of limiting the expenses of the parties by reducing the case to a motion, it appears to run counter to legislative intent that the CAA be enforced through the CPA. RCW 19.16.440. It also required Cavalry to essentially defend against a CPA action without such a case having been initiated and without being allowed to engage in relevant discovery, while conversely permitting the Askins to litigate a CPA claim without filing one. Although the trial court did not grant all relief available under the CPA, it granted enough to exceed the scope of its authority under CR 60.

Without applying the RCW 19.16.450 remedy, it is unclear on this record whether the trial judge believed the Askins had met their burden under CR 60(b)(6). Although we recognize that all parties benefit from the simplified and less expensive motion practice, it was not a practice available under the rule. We therefore reverse and remand for

further proceedings and without prejudice to seeking relief outside the strictures of CR

60.[1]

 Reversed and remanded.

_____
 Korsmo, J.

WE CONCUR:

_____
Fearing, J.

_____
Siddoway, J.

_____

[1] This case should settle. In light of the fact that Fireside appears to have collected, or attempted to collect, fees and costs that it was not entitled to collect, it may be prudent for Cavalry to abandon its efforts to collect on the debt and enter a satisfaction of judgment rather than defend Fireside's actions.