**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 26, 2020

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 26 2020

SUSAN L. CARLSON
SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| FIRESIDE BANK, fka FIRESIDE THRIFT CO., a California corporation, | ) ) ) | |
| Plaintiff, | ) ) | No. 96853-5 |
| CAVALRY INVESTMENTS, LLC, | ) ) | |
| Respondent, | ) ) | En Banc |
| v. | ) ) | |
| JOHN W. ASKINS and LISA D. ASKINS, husband and wife and their marital community comprised thereof, | ) ) ) | Filed: March 26, 2020 |
| Petitioners. | ) ) | |

YU, J.— This case provides us with an opportunity to discuss the limits of

CR 60 in cases where a creditor uses the garnishment process to enforce a default

judgment against a debtor. While the procedural facts in this case may appear

complicated based on the limited record and the shifting arguments of the parties, the end result is simple: CR 60 may not be used to prosecute an independent cause of action separate and apart from the underlying cause of action in which the original order or judgment was filed.

However, based on the limited record presented and contrary to the contentions of respondent Cavalry Investments, LLC, we cannot conclude with certainty that the trial court in this case improperly ordered affirmative relief on the CR 60 motion of petitioners John and Lisa Askins. Instead, it appears that the trial court properly considered argument and evidence relevant to the questions of what was still owed on the underlying existing judgment and whether that judgment had been satisfied. We therefore reverse the Court of Appeals and reinstate the trial court's order.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In August 2004, the Askinses purchased a used car by entering into a retail installment contract with East Sprague Motors & R.V.'s, Inc. for $13,713.44 at 18.95 percent interest per year. The contract was contemporaneously assigned to Fireside Bank, formerly known as Fireside Thrift Co.

The Askinses made two years of regular payments and then returned the car to Fireside in an attempt to satisfy the loan. However, the loan was never satisfied. Fireside sold the car for $4,200, which was less than the remaining balance owed,

leaving the Askinses with an ongoing obligation. At this point in time, the Askinses had made $8,953 in payments to Fireside.

In September 2007, Fireside sued the Askinses for the remaining balance of the loan, alleged to be $7,754.39. The Askinses did not appear, and the court entered a $10,053.00 default judgment against them, which included prejudgment interest, costs, and attorney fees. Postjudgment simple interest was to accrue at 18.95 percent per year. Fireside eventually assigned the debt to Cavalry in 2012.

This judgment and its attendant obligations followed the Askinses for the next eight years. They were subjected to 14 writs of garnishment and several unsuccessful attempts at garnishment by Fireside and Cavalry. Approximately $10,849.16 was collected over the course of the garnishment proceedings. Fireside and Cavalry did not file any satisfactions of the garnishment judgments or partial satisfactions of the underlying judgment. Cavalry's final writ of garnishment, obtained on August 3, 2015, stated that the Askinses still owed $11,158.94.

In the fall of 2015, the Askinses obtained counsel, who sent a letter to Cavalry on November 10, 2015, asking for an accounting. Cavalry released its final writ of garnishment on November 23, 2015, but did not provide an accounting of the Askinses' debt. The Askinses' lawyer attempted to follow up multiple times, and Cavalry's lawyer ultimately responded by e-mail in April 2016 with an

internal accounting that showed the Askinses still owed $15,820.89 as of March 2012. The accounting revealed that attorney fees and collection costs in amounts greater than that allowed by law had been included in each writ of garnishment issued between September 2007 and March 2012. The Askinses believed this accounting evidenced possible violations of Washington's Collection Agency Act (CAA), ch. 19.16 RCW.

In June 2016, the Askinses filed a motion for an order to show cause "in accordance with Civil Rule 60" in the same case as the underlying 2007 judgment. Clerk's Papers (CP) at 404. The Askinses asserted that Cavalry, and Fireside before it, had repeatedly collected or attempted to collect unlawful garnishment attorney fees, fraudulently inflated garnishment costs, and unlawful compound interest, all in violation of RCW 19.16.250(21). Based on these alleged violations, the Askinses asserted that RCW 19.16.450 precluded Cavalry from collecting any amount exceeding the original principal of the judgment, $7,754.39. It is undisputed that the Askinses had already paid more than that amount through garnishments.

As relief, the Askinses requested that the trial court "[q]uash the August 3, 2015, Writ of Garnishment"; "[c]ompel entry of a full satisfaction of judgment"; "[o]rder Plaintiff to return all funds collected in excess of the princip[al] amount of the debt"; "[m]ake a finding that the Plaintiff violated RCW 19.16.250(21) by

4

collecting, or attempting to collect, unlawful amounts"; and "[a]ward appropriate and just sanctions, including reimbursement of damages to the Defendant, costs and attorney's fees." *Id.* at 403. The court issued an order to show cause why the requested relief should not be granted.

Cavalry responded to the order to show cause, but it did not challenge the Askinses' use of CR 60 as a procedural mechanism to obtain the relief requested, nor did it contend that such relief, if factually supported, would exceed the court's authority. Instead, Cavalry provided a new "complete and accurate amortization of the account," in which "[e]very cost and fee from prior counsel has been excluded and the interest reduced [to] 12%," showing that the Askinses still had a remaining balance of $9,432.09 on the underlying debt. *Id.* at 408, 410. In reply, the Askinses challenged the introduction of this new amortization and noted that even if the court considered it, "the new calculation also finds amounts due which are less than the amounts counsel swore were due in declarations for writs of garnishment." *Id.* at 414. Oral argument was heard by the same judge who signed the underlying 2007 default judgment.

At oral argument, the Askinses' attorney contended that "every single one of [the garnishments] violated Washington law from the very beginning, in a number of ways" by including unlawful garnishment attorney fees and costs. Verbatim Transcript of Proceedings (VTP) (July 15, 2016) at 4. Counsel also noted that no

satisfactions of judgment had ever been entered and, therefore, asserted that a full accounting of the debt would be impossible. However, counsel contended that it was unnecessary to attempt such an accounting because the repeated attempts to collect illegal fees and costs violated RCW 19.16.250(21), and any violation of RCW 19.16.250 automatically invokes RCW 19.16.450 such that "the judgment is forever stripped to principal, and no amount of interest, costs, fees, attorney fees or anything thereafter may ever be collected by anybody for all time." *Id.* at 8. Because it was undisputed that the Askinses had already paid more than the original principal of the judgment, $7,754.39, counsel argued that they were entitled to a full satisfaction of judgment.

In response, counsel for Cavalry pointed to the amortization it had provided in response to the show cause order and contended that the Askinses failed to meet their burden of proving that the judgment was fully satisfied. Counsel also argued that in order to violate RCW 19.16.250(21), Cavalry would have had to attempt to collect even after the underlying judgment, including all lawful costs, fees, and interests, had been "fully satisfied." *Id.* at 16. Counsel raised no objection to the use of CR 60 as a procedural vehicle for the Askinses' claim and did not contend that the court lacked authority to provide the relief requested.

The trial court granted the Askinses' motion, finding that "[t]he plaintiff, Cavalry Investments, LLC, violated RCW 19.16.250(21) by attempting to collect,

through applications for writs of garnishment, amounts of money greater than allowed by law." CP at 427. Based on these violations and RCW 19.16.450, the court ordered that "the judgment is stripped to [the] princip[al]. Because the plaintiff has collected an amount greater than [the] princip[al], the plaintiff is ordered to immediately enter a full satisfaction of judgment." *Id.* The court did not impose sanctions, nor did it order Cavalry to return any money it had collected from the Askinses in excess of the principal of the underlying judgment.

Cavalry filed a motion for reconsideration, arguing that "the only way to violate RCW 19.16.250(21), is to collect in addition to the principal amount of a claim, any sum *other* than allowable interest expressly authorized by statute." *Id.* at 429. Cavalry contended that it could not have committed such a violation because the interest on the loan was statutorily authorized and that its amortizations showed that even without the unlawful costs and fees, the Askinses still owed money on the underlying principal plus interest. At oral argument, Cavalry's counsel briefly raised the need for the opportunity to put on more evidence but did not otherwise challenge the use of CR 60 as a procedural mechanism to reach the merits of the Askinses' claims. The trial court denied the motion for reconsideration, ruling that "Plaintiff was entitled to charge and collect interest on the principal balance of the judgment. It lost that right, however, when it attempted to collect charges that were not authorized by law." *Id.* at 463.

7

Cavalry appealed, arguing that the evidence did not support the trial court's finding of any RCW 19.16.250(21) violations and that the Askinses had not met their burden of proving the judgment had been satisfied. In addition, for the first time on appeal, Cavalry noted in passing that "a trial court cannot grant affirmative relief through CR 60(b); it can only provide relief from the judgment," and asserted that the trial court's "finding that Cavalry violated RCW 19.16.250(21)" constituted improper affirmative relief. Appellant's Am. Br. at 32 & n.23 (Wash. Ct. App. No. 34918-7 (2018)) (citing *Geonerco, Inc. v. Grand Ridge Props. IV, LLC*, 159 Wn. App. 536, 542-43, 248 P.3d 1047 (2011)).

The Court of Appeals reversed solely on the basis of this last assertion, holding that the trial court "exceed[ed] the scope of its authority under CR 60." *Fireside Bank v. Askins*, 6 Wn. App. 2d 431, 439, 430 P.3d 1145 (2018). The court reasoned that the Askinses' attempt "to show a violation of the CAA, invoke the remedy of RCW 19.16.450, and, once applying that remedy, claim that the judgment was satisfied . . . appears to run counter to legislative intent that the CAA be enforced through the [Consumer Protection Act (CPA), ch. 19.86 RCW]." *Id.* Because it was not clear from the record whether the Askinses had satisfied the judgment "[w]ithout applying the RCW 19.16.450 remedy," the Court of Appeals remanded for further proceedings, cautioning "that sending the amortization schedule to the Askinses' attorney could not itself constitute a violation of the

8

CAA" because it was a communication between opposing attorneys. *Id.* at 439, 438.

We granted the Askinses' petition for review. Order, No. 96853-5 (Wash. May 1, 2019). We now reverse and reinstate the trial court's order.

ANALYSIS

A.    The CR 60 issue was not properly preserved for appeal

Generally, an "'appellate court may refuse to review any claim of error which was not raised in the trial court.'" *State v. O'Hara*, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009) (quoting RAP 2.5(a)). However, RAP 2.5(a) provides that three types of unpreserved errors may be raised for the first time on appeal: "(1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right." In addition, "RAP 2.5(a) grants appellate courts discretion to accept review of claimed error not appealed as a matter of right. Each appellate court must make its own decision to accept discretionary review." *State v. Blazina*, 182 Wn.2d 827, 834-35, 344 P.3d 680 (2015) (footnote and citation omitted). In this case, the Court of Appeals reversed on an issue not preserved for appeal, and we cannot say, based on the record presented, that it properly exercised its discretion to do so.

The Court of Appeals explicitly based its reversal on its holding that a trial court does not have authority to find a violation of the CAA and apply RCW

19.16.450 in the context of a CR 60(b) motion. *Fireside Bank*, 6 Wn. App. 2d at 438-40. However, as discussed above, Cavalry never raised this issue at the trial court, even though the Askinses' motion for an order to show cause explicitly referenced CR 60. Instead, Cavalry argued the merits of the case and the sufficiency of the evidence, both in its response to the show cause order and in its motion for reconsideration. Furthermore, at oral argument before this court, Cavalry explicitly conceded that it never argued to the trial court that CR 60 was an improper procedural mechanism for the Askinses' claims. Wash. Supreme Court oral argument, *Fireside Bank v. Askins*, No. 96853-5 (Oct. 22, 2019), at 27 min., 9 sec. to 27 min., 38 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

Thus, the Court of Appeals based its holding on an issue not preserved for appellate review by the parties. This is understandable in light of the briefing on appeal, and we recognize the discretion of appellate courts to reach unpreserved issues. However, absent any discussion of RAP 2.5 or any indication of why it was reaching the issue, we cannot conclude that the Court of Appeals properly exercised its discretion to reverse on the basis of Cavalry's unpreserved objection to the procedure the Askinses used to bring their claims before the trial court. Had Cavalry raised an objection, the trial court could have addressed it and there would be a sufficient record for appellate review of whether the trial court improperly

granted affirmative relief in this case.  However, the record presented is not sufficient to make such a holding.

B.      We cannot hold that the trial court ordered any improper affirmative relief in this case based on the record presented

CR 60 is a limited procedural tool that governs relief from final judgments. *Burlingame v. Consol. Mines & Smelting Co.*, 106 Wn.2d 328, 336, 722 P.2d 67 (1986).  Relief may be sought on many bases, including mistakes, inadvertence, excusable neglect, newly discovered evidence, and fraud.  *See* CR 60(b).  The rule balances the principles of equity and finality.  *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979).  Fundamentally, a CR 60 proceeding is "equitable in its character, administered upon equitable principles, and extended upon equitable terms."  *Roth v. Nash*, 19 Wn.2d 731, 738, 144 P.2d 271 (1943). This is consistent with a court's "inherent power to supervise the execution of judgments" that have prospective effect.  *Pac. Sec. Cos. v. Tanglewood, Inc.*, 57 Wn. App. 817, 821, 790 P.2d 643 (1990).

No matter the circumstances, however, the only relief that may be ordered pursuant to CR 60 is relief "*from* a final judgment, order, or proceeding," not any entitlement *to* affirmative relief.  CR 60(b) (emphasis added).  Thus, "'Rule 60(b) is available only to set aside a prior judgment or order; courts may not use Rule 60(b) to grant affirmative relief in addition to the relief contained in the prior order or judgment.'"  *Geonerco*, 159 Wn. App. at 542 (internal quotation marks omitted)

11

(quoting *Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007)); *see also* JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 60.25 (Daniel R. Coquillette et al. eds., 3d ed. 2004).[1]  For instance, on a CR 60(b) motion, a trial court cannot order additional obligations outside the original judgment, such as an award of monetary damages.  *Geonerco*, 159 Wn. App. at 541.

Based on the record presented, we cannot hold that the relief granted in this case exceeded the scope of the original judgment, and thus it should not have been characterized as improper affirmative relief.  The Askinses claimed they should be relieved from the prospective application of the default judgment against them, relief that is within the scope of CR 60.  The fact that this relief was premised on alleged violations of the CAA did not transform their request for relief from the judgment into a request for affirmative relief.

The CAA regulates debt collection practices in Washington State.  *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 53, 204 P.3d 885 (2009).  The CAA contains an extensive list of prohibited collections practices.  RCW 19.16.250. There are multiple potential statutory remedies available when these prohibited practices are committed.  First, the prohibited practices "are declared to be unfair acts or practices or unfair methods of competition in the conduct of trade or

---

[1] Due to the limited Washington authority on this issue, we consider, but are not bound by, federal authorities.

commerce for the purpose of the application of the [CPA]." RCW 19.16.440. In addition, "the attorney general or the prosecuting attorney of any county within the state may bring an action in the name of the state against any person to restrain and prevent any violation of [the CAA]." RCW 19.16.460.

However, neither of these remedies (a CPA action or an injunctive action by the State) purports to be exclusive, and the CAA itself provides an additional remedy:

> If an act or practice in violation of RCW 19.16.250 is committed by a licensee or an employee of a licensee in the collection of a claim, neither the licensee, the customer of the licensee, *nor any other person* who may thereafter legally seek to collect on such claim *shall ever be allowed to recover any interest, service charge, attorneys' fees, collection costs, delinquency charge, or any other fees or charges* otherwise legally chargeable to the debtor on such claim: PROVIDED, That any person asserting the claim may nevertheless recover from the debtor the amount of the original claim or obligation.

RCW 19.16.450 (emphasis added). Thus, once a violation has occurred, the creditor may only collect the "amount of the original claim or obligation." *Id.*

The CAA does not explicitly provide or limit the procedural mechanisms by which a debtor may invoke RCW 19.16.450. We note, however, that RCW 19.16.450 does not provide for monetary damages or other affirmative relief against the creditor; the statute, in itself, provides only a limitation on the prospective application of a judgment. Without question, a debtor seeking judgment for amounts wrongfully collected or statutory damages pursuant to the

13

CPA must bring an independent cause of action, rather than bringing a CR 60 motion.[2] However, a finding that RCW 19.16.450 applies and therefore limits the prospective application of a judgment is not categorically excluded from the scope of relief that may be ordered in the context of a CR 60 motion.

At the time of the Askinses' motion for an order to show cause in this case, the judgment against them certainly had prospective application, and Cavalry had invoked the authority of the court multiple times to enforce that judgment through writs of garnishment. The stated amount owed on the judgment included interest, costs, and attorney fees, but Cavalry had no right to collect these amounts if RCW 19.16.450 applied. Therefore, the question of whether the CAA had been violated related directly to the determination of what the judgment actually was. Moreover, while the Askinses' initial motion for an order to show cause did request additional affirmative relief (return of funds unlawfully collected and sanctions), the trial court did not grant it. The only relief that the trial court granted was relief from the prospective application of a judgment over which the court had ongoing jurisdiction. Thus, on the record presented, we cannot say that the trial court provided affirmative relief beyond the scope of the original judgment.

---

[2] The issue of whether a violation of RCW 19.16.250 provides for an independent implied cause of action has not been adequately briefed and is not properly before us. We therefore decline to address it.

14

C.      We reverse the Court of Appeals and reinstate the trial court's order

In addition to its passing reference to the unavailability of affirmative relief in a CR 60 motion, Cavalry raised challenges on appeal to the merits of the trial court's decision, contending that it was not supported by sufficient evidence and that the trial court improperly shifted the burden of proof to Cavalry. While the better practice may have been to hold an independent evidentiary hearing, we hold that the trial court had sufficient evidence to support its finding of "attempt[s] to collect, through applications for writs of garnishment, amounts of money greater than allowed by law." CP at 427. This violated RCW 19.16.250(21), thus precluding collection by "any other person" of any money exceeding the principal of the underlying judgment "ever." RCW 19.16.450. It is undisputed that the Askinses had already satisfied the principal of the underlying judgment, so the trial court correctly ruled that the judgment had been satisfied and ordered that the Askinses were entitled to prospective relief.

## CONCLUSION

We do not seek to expand the operation of CR 60, and we reaffirm that it is a limited procedural rule whose sole purpose is to relieve parties from the prospective application of judgments that remain within the jurisdiction of the court. In this case, because Cavalry did not object to the procedural mechanism by which the Askinses brought their claims, we cannot conclude based on the record

15

presented that the trial court exceeded its authority pursuant to CR 60.  We

therefore reverse the Court of Appeals and reinstate the trial court's order.

_____
                                    ___, J.

WE CONCUR:


Stephens, C.J.
_____

_____

_____          González, J.
Madsen, J.                             _____

                                       _____
                                       Geof McCloud, J.

_____

                                       _____
                                       Fairhurst, J.P.T.

17

No. 96853-5

WIGGINS, J. (concurring)—Lisa and John Askins took out a loan to pay for a car. The Askinses were subjected to a default judgment for that loan. Their wages were then garnished for years, first by Fireside Bank and then by Cavalry Investments. Eventually they obtained counsel—pro bono counsel, likely all they could afford. Their counsel discovered that the garnishments were likely unlawful and sought to obtain, among other relief, satisfaction of judgment. He filed a CR 60(b) motion in the same court as the original judgment, under the same cause number, before the same judge, seeking entry of satisfaction of judgment. To determine whether the judgment had been satisfied, the trial judge turned to the Collection Agency Act (CAA), ch. 19.16 RCW, which strips a judgment to its principal in the event of certain violations. RCW 19.16.450. The trial court concluded that the Askinses' judgment-creditors had indeed violated the CAA because they had

> repeatedly attempted to collect garnishment attorney fees in excess of the amount authorized by RCW 6.27.090, that it repeatedly collected garnishment costs in excess of the actual costs that were incurred in violation of RCW 6.27.090(2), that garnishment costs and attorney fees were charged that were

not specified or included in garnishment judgments, and that interest was unlawfully compounded.

CP at 462-63. The trial judge stripped the judgment to its principal. With the judgment stripped to its principal, it was clear that the Askinses had already paid more than was owed. Accordingly, the trial judge ordered entry of satisfaction of judgment.

The Court of Appeals reversed, holding that CR 60(b) cannot be used to enforce violations of the CAA. *Fireside Bank v. Askins*, 6 Wn. App. 2d 431, 439-40, 430 P.3d 1145 (2018). Instead, the Court of Appeals noted that the Askinses could seek relief "outside the strictures of CR 60." *Id.* The appellate decision added, "This case should settle. In light of the fact that Fireside appears to have collected, or attempted to collect, fees and costs that it was not entitled to collect, it may be prudent for Cavalry to abandon its efforts to collect on the debt and enter a satisfaction of judgment rather than defend Fireside's actions." *Id.* at 440 n.1.

The Askinses petitioned for review by this court, which we granted.

I agree with the result reached by the majority, but I concur because I disagree with its analysis and its sweeping holding regarding the scope of CR 60(b) relief.

ANALYSIS

I.     We should not decide this case on the ground of unpreserved error as the majority does

The majority bases its decision on the ground that Cavalry Investments failed to preserve the claimed error. Majority at 9-10. Specifically, the majority notes that Cavalry Investments did not object before the trial court to its use of CR 60(b) and that "absent any discussion [in the Court of Appeals opinion] of RAP 2.5 or any indication

2

of why [the Court of Appeals] was reaching the issue, we cannot conclude that the Court of Appeals properly exercised its discretion to reverse on the basis of Cavalry[ Investment]'s unpreserved objection." Majority at 10; *see also* majority at 15-16 (reversing on this ground alone).

I would not hold that the Court of Appeals erred by considering this argument. RAP 2.5(a) provides that "[t]he appellate court *may* refuse to review any claim of error which was not raised in the trial court." (Emphasis added.) Nothing in RAP 2.5 or the cases that the majority relies on indicate that an appellate court is subjected to abuse of discretion analysis when it decides to review an issue where error was not preserved. Rather, our case law shows that it is purely up to the appellate court to decide whether to review an unpreserved issue. In *State v. O'Hara*, cited by the majority, we merely quoted RAP 2.5(a) and went on to note that "[t]he underlying policy of the rule is to 'encourag[e] the efficient use of judicial resources." 167 Wn.2d 91, 98, 271 P.3d 756 (2009) (second alteration in original). We did *not* state that the point is to prevent courts from reviewing unpreserved errors at their own initiative. *See id.* While *O'Hara* does go into detail as to how an *appellant* can overcome the court's discretion to decline to consider the merits of an unpreserved error, that does not limit a *court's* ability to consider it. *See id.* at 98-99. Instead, as we have made clear, "by using the term 'may,' RAP 2.5(a) is written in discretionary, rather than mandatory, terms." *Roberson v. Perez*, 156 Wn.2d 33, 39, 123 P.3d 844 (2005) (citing *State v. Ford*, 137 Wn.2d 472, 477, 484-85, 973 P.2d 452 (1999)). Indeed, the majority itself notes that "'[e]ach appellate court must make its own decision to accept discretionary

3

review.'" Majority at 9 (quoting *State v. Blazina*, 182 Wn.2d 827, 835, 344 P.3d 680

(2015)) (footnote and citation omitted).[1]

The Court of Appeals therefore did not err by addressing the CR 60(b) issue.

We should reach the merits of this issue ourselves. I would therefore not resolve this

case on the ground of unpreserved error but on the ground that CR 60(b) clearly

provides the trial court with the authority to strip the judgment to its principal.

    II.    The trial court correctly used CR 60(b) to provide the Askinses with relief

The language of CR 60(b) and our precedent clearly permit the trial court's

actions. After explaining the operation of CR 60(b)(6), I will explain the conflict

between the majority's interpretation and my interpretation of CR 60(b)(6).

CR 60(b)(6) reads in relevant part:

> (b) . . . On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . . .
>
> (6) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application.

Thus, under the plain language of CR 60(b)(6), a party may obtain relief where

there has been a final judgment, order, or proceeding and the court concludes that

---

[1] Although *Blazina* uses the phrase "discretionary review," it is clear from the context that it means discretionary review of an *issue*, not, as the term would normally mean, discretionary review of a *case*. *See* 182 Wn.2d at 831 ("The Court of Appeals declined to consider this *claim* because Blazina 'did not object [below].'" (emphasis added) (quoting *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492 (2013))), 834-35 ("While appellate courts normally decline to review issues raised for the first time on appeal, RAP 2.5(a) grants appellate courts discretion to accept review of claimed error not appealed as a matter of right." (citation omitted)).

*Fireside Bank v. Askins*, No. 96853-5
Wiggins, J. (concurring)

relief should be given "upon such terms as are just." *See Bus. Servs. of Am. II, Inc. v. WaferTech, LLC*, 174 Wn.2d 304, 307, 274 P.3d 1025 (2012) (interpreting court rules in the same manner as statutes, starting with the "rule's plain language and ordinary meaning").

Under the facts of this case, the plain language of the rule requires a grant of relief to the Askinses and clearly authorizes a superior court judge to direct that a judgment is satisfied, as happened here. Nothing in CR 60(b)(6) prevents a trial court from looking to the CAA to determine if the judgment had been satisfied. Rather, determining the amount of the claim is necessarily part of determining whether the judgment is satisfied. In cases like the one before us, RCW 19.16.450[2] determines the amount of the claim that can lawfully be collected. Therefore, whether RCW 19.16.450 applies is *necessarily* part of the question of whether the judgment has been satisfied when the judgment is governed by the CAA. In much the same way, determining whether RCW 19.16.250 was violated determines whether RCW 19.16.450 applies. Thus, determining whether RCW 19.16.250 was violated is also necessarily part of a CR 60(b)(6) motion when the judgment arises from a debt governed by the CAA.

---

[2] RCW 19.16.450 provides, "If an act or practice in violation of RCW 19.16.250 is committed by a licensee or an employee of a licensee in the collection of a claim, neither the licensee, the customer of the licensee, nor any other person who may thereafter legally seek to collect on such claim shall ever be allowed to recover any interest, service charge, attorneys' fees, collection costs, delinquency charge, or any other fees or charges otherwise legally chargeable to the debtor on such claim: PROVIDED, That any person asserting the claim may nevertheless recover from the debtor the amount of the original claim or obligation."

5

Overall, the elements of CR 60(b)(6) are clearly met in this case. There was a judgment: the default judgment against the Askinses. The judgment was satisfied: CR 60(b)(6) clearly permits using RCW 19.16.450 to determine whether the judgment is satisfied. Finally, the terms here are just and allow the Askinses relief from years of unlawful garnishment and cause no undue harm to Cavalry Investments.

The majority correctly concludes that CR 60(b) was not improperly used by the trial court. Majority at 12. However, in the process, the majority essentially accepts Cavalry Investment's position that affirmative relief is never proper under a CR 60(b) motion. Majority at 2, 11-12. This adds an additional requirement that is not in the language of the rule, which is that the relief sought by the moving party must derive from the facts and law of the underlying controversy. *See* majority at 1-2 ("CR 60 may not be used to prosecute an independent cause of action separate and apart from the underlying cause of action in which the order or judgment was filed."). The majority cites *Geonerco, Inc. v. Grand Ridge Properties IV, LLC*, 159 Wn. App. 536, 541, 248 P.3d 1047 (2011), for the conclusion that "on a CR 60(b) motion, a trial court cannot order additional obligations outside the original judgment, such as an award of monetary damages." Majority at 12. *Geonerco* does state that "'Rule 60(b) is available only to set aside a prior judgment or order; courts may not use Rule 60(b) to grant affirmative relief in addition to the relief contained in the prior order or judgment.'" *Geonerco*, 159 Wn. App.at 542 (internal quotation marks omitted) (quoting *Delay v. Gordon*, 475 F.3d 1039, 1044-45 (9th Cir. 2007)). And I agree that the relief ordered here was within the scope of the original judgment as the majority concludes.

6

However, I would not adopt *Geonerco*'s sweeping and largely unsupported statement about the limited scope of CR 60(b). There is simply no need to do so in this case where, as the majority and I agree, the relief afforded the Askinses by the trial court was within the scope of the judgment. Thus the majority's broad conclusion regarding the scope of CR 60(b) is likely dicta. *See State ex rel. Lemon v. Langlie*, 45 Wn.2d 82, 89, 273 P.2d 464 (1954) (noting that dicta is "'an observation or remark made by a judge in pronouncing an opinion upon a cause, concerning some rule, principle, or application of law, or the solution of a question suggested by the case at bar, but not necessarily involved in the case or essential to its determination'" (quoting BLACK'S LAW DICTIONARY 541 (4th ed. 1951))).

Precedent supports abstaining from adopting *Geonerco*'s conclusions. We have previously allowed a trial court to alter monetary amounts in a judgment under a CR 60(b). *In re Marriage of Jennings*, 138 Wn.2d 612, 628-29, 980 P.2d 1248 (1999). In *Jennings*, Karen Rae Jennings filed a show cause motion under CR 60(b) to vacate or modify a dissolution of marriage decree. *Id.* at 617-18. The trial court "concluded that extraordinary circumstances existed under CR 60(b)(11) to vacate and amend the 1992 decree" in part and, "[i]n an amended order . . . awarded [Karen Jennings] as 'non-modifiable compensatory spousal maintenance' one-half of Respondent's total monthly compensation for disability and retirement." *Id.* at 628-29. The Court of Appeals reversed. *Id.* at 629. In reversing the Court of Appeals and reinstating the trial court order, this court unanimously "conclude[d] the trial court did not abuse its discretion in clarifying the original decree of dissolution . . . and the trial court could

7

reasonably conclude the drastic change in the status and amount of the monthly military retirement payments to Respondent constituted an 'extraordinary circumstance' under CR60(b)(11)." *Id.* at 625-26. In sum, the trial court, under CR 60(b), not only "vacate[d]" the judgment but "amend[ed]" it, "awarding compensatory spousal maintenance" in the process—and there was no question that this action was permissible and proper. *Id.* at 628-29. This shows that relief within the scope of the original judgment is *not* necessarily the absolute limit of CR 60(b).

Federal courts dealing with Federal Rule of Civil Procedure 60(b)(5)—the equivalent to our CR 60(b)(6)—have employed Federal Rule of Civil Procedure 60(b)(5) in ways that the majority opinion appears to foreclose.[3] Federal courts have credited a settlement amount toward a judgment in Federal Rule of Civil Procedure

---

[3] FED. R. CIV. P. 60(b)(5) reads:

> (b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . . .
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable.

While our CR 60(b)(6) reads:

> **(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc.** On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . . .
>
> (6) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application.

8

60(b) motions. *Kassman v. Am. Univ.*, 178 U.S. App. D.C. 263, 546 F.2d 1029, 1033 (1976). They have reduced the amount of the judgment. *Snowden v. D.C. Transit Sys., Inc.*, 147 U.S. App. D.C. 204, 454 F.2d 1047, 1048 n.5 (1971). They have found various ways to decrease the amount owed to the judgment and therefore find it satisfied. *Torres-Troche v. Municipality of Yauco*, 873 F.2d 499, 501 n.7 (1st Cir. 1989) (discussing the various ways in which federal courts have accomplished this). These cases therefore also show that relief within the scope of the original judgment is not necessarily the limit of the relief afforded by CR 60(b).

Finally, the highest court of at least one other state, when engaging in lengthy discussion regarding the limits of its equivalent of CR 60(b), permits affirmative relief in cases where judgment was obtained by fraud. *Kawamata Farms, Inc. v. United Agri Prods.*, 86 Haw. 214, 258-59, 948 P.2d 1055 (1997). While we need not follow the Hawaii Supreme Court, we, too, should reserve our judgment regarding the scope of CR 60(b) for a case that stretches the limits of relief, as did *Kawamata Farms*, not one where the relief squarely falls within those limits.

## CONCLUSION

The majority reaches the correct result. Under its holding, the Askinses have the relief they deserve. But I would reach that result through a different path and without broadly limiting the scope of CR 60(b) relief. For those reasons, I respectfully concur.