# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of

VALERIE NDJE NLEND,

      Respondent,

  and

RODRIGUE ALAIN NDJE NLEND,

      Appellant.

No. 86331-2-I (consolidated with Nos. 87482-9-I, 87158-7-I)

DIVISION ONE

UNPUBLISHED OPINION

BIRK, J. — After more than two years of litigating this dissolution matter in four counties in two states, Rodrigue Ndje Nlend did not appear for or participate in the trial. Several months after the trial court entered final orders that dissolved his marriage to Valerie Ndje Nlend and provided for the care and support of the parties' children, Rodrigue[1] filed a series of motions primarily seeking to vacate the final dissolution orders. The trial court entered nine orders denying the postjudgment motions. The court later granted a motion to correct clerical errors, and entered an amended decree of dissolution.

In three consolidated appeals, Rodrigue challenges 25 orders entered in this proceeding. Rodrigue's challenges are largely precluded by his failure to preserve his claims of error, present evidence, or challenge Valerie's evidence at trial. His claims otherwise lack merit and are simply a continuation of his

---

[1] We use the parties' first names for clarity and intend no disrespect by doing so.

established pattern of using the legal system to harass and distract from his repeated failures to comply with orders enforcing his court-ordered obligations over the life of this case. We affirm.

I

The parties were married in 2006, had two children, and lived in Washington for about 15 months before they separated in September 2020. In a November 2020 proceeding, the King County Superior Court entered a Domestic Violence Protection Order (DVPO) protecting Valerie and the children and imposing restrictions on Rodrigue. In May 2021, Valerie filed a petition in King County to dissolve the parties' marriage. A few months thereafter, she moved to North Carolina with the children.[2] The trial court entered temporary provisions requiring that Rodrigue pay spousal and child support, and a temporary parenting plan.

In April 2022, following a contempt hearing to enforce Rodrigue's past due support obligations, Rodrigue filed an action seeking dissolution in Mecklenburg County, North Carolina. In July 2022, Rodrigue filed in King County Superior Court a judgment for "Absolute Divorce" entered by the Mecklenburg County court and sought dismissal of Valerie's Washington petition. The superior court dismissed the petition without prejudice. Valerie sought reconsideration, asserting that the North Carolina order did not address many significant issues she sought to resolve in her Washington petition, such as child support, parenting provisions, and the

---

[2] Although Valerie moved without providing advance notice, the trial court later concluded the relocation was not in bad faith and it was in the children's best interest to remain in North Carolina with Valerie pending resolution of the case.

2

distribution of assets. In August 2022, the superior court granted reconsideration and vacated the dismissal order, concluding that it was "inappropriate" for Rodrigue to obtain the North Carolina order while the matter was pending in Washington. The trial court reset the matter for trial and Rodrigue appealed the August 2022 order.

Meanwhile, the King County Superior Court entered an order confirming jurisdiction in Washington, after conferral as authorized by statute, RCW 26.27.101 (a Washington court may communicate with another state court about a family law proceeding). The North Carolina court vacated the judgment of divorce. This court affirmed the trial court's ruling reinstating Valerie's petition and resetting the matter for trial. See In re Marriage of Nlend, No. 84442-3-I, slip op. at 1, 10-11 (Wash. Ct. App. July 31, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/844423.pdf.

With both Washington and North Carolina courts unambiguously confirming Washington's jurisdiction over the dissolution matter, Rodrigue filed additional competing and duplicative actions in Mecklenburg County and two other North Carolina counties, seeking the same relief. And he again unsuccessfully moved to dismiss the Washington case. In a 2023 order resolving approximately twenty motions Rodrigue filed in that court, a Mecklenburg County trial court found that Rodrigue had engaged in "forum shopping" to avoid the enforcement of Washington's support orders; exhibited "gamesmanship and acted in bad faith" by filing excessive pleadings, inexcusably failing to appear for hearings, and ignoring

3

this court's rulings; interposed pleadings for the "improper purpose of harassing [Valerie], causing unnecessary delay, and needlessly increasing the costs of litigation;" and used the courts in both states in a "weaponized manner for the purpose of continuing his abuse and harassment."

Four times between June 2022 and April 2023, the King County court found Rodrigue in contempt for failing to comply with support and other court-ordered obligations. The court imposed numerous conditions on Rodrigue to purge the contempt, such as, payment of outstanding support amounts due, disclosure of his residential address with proof of residency, and the return of funds withdrawn from the parties' accounts following the parties' 2020 separation. Rodrigue did not respond to the allegations of contempt, appear at any of the contempt hearings, or comply with any purge conditions. In addition to the conditions included in the initial temporary orders, the court entered orders imposing specific financial restraints on Rodrigue, freezing certain accounts, and prohibiting withdrawal or transfer of financial assets.

In April 2023, the King County court renewed the DVPO. A few days later, the trial court denied another of Rodrigue's "multiple motions" to dismiss, noting that courts in Washington and North Carolina had ruled that "Washington Court has jurisdiction in this matter," Rodrigue had previously raised a "inconvenient forum" argument, and he had not shown that any relevant circumstance had changed.

Rodrigue did not participate in a pretrial status conference held on October 26, 2023 or respond to Valerie's ER 904 submissions. In November 2023, Valerie filed a motion to require Rodrigue to appear in person for trial. Valerie pointed to Rodrigue's history of noncompliance with court orders and explained that, following the April 2023 renewal of the DVPO and denial of his motion to dismiss, Rodrigue had ceased participating in the case. The court granted the motion and ordered Rodrigue to appear in person.

Valerie appeared at the December 14, 2023 trial by Zoom.[3] The court considered her testimony and more than 70 exhibits she filed. Rodrigue did not appear. The trial court memorialized Rodrigue's nonappearance and noted that the court had communicated with him about the start of trial using the e-mail address he had used throughout the case:

> All right, so I want to just state on the record that the respondent is not here. Since being assigned this case, I forget when it was, last week that came to me on brokerage, on reassignment, I have not heard—we have not heard anything from the father. He has not communicated in any way with my bailiff. The email address that we are using has not been returned. Nothing's been returned from that address, and it appears to be the same address that has been used throughout these proceedings. We haven't heard anything. We haven't received anything. He was ordered to appear in person. My courtroom door is open, we're down here at the King County Courthouse, and although the petitioner is appearing on Zoom, the respondent was ordered, for many reasons, to come in in person and he has failed to do so.

---

[3] "Zoom" is a cloud-based, peer-to-peer videoconferencing software platform that is used for teleconferencing, telecommuting, distance education, and social relations.

5

On January 22, 2024, the trial court entered a Decree of Dissolution, Findings of Fact and Conclusions of Law, a Parenting Plan, and a Child Support order. Shortly after, the court entered a one year restraining order protecting Valerie and the children. On February 20, 2024, Rodrigue filed a notice of appeal designating for review the final dissolution orders and several underlying orders.[4]

About five months after entry of the orders that finalized the dissolution, Rodrigue filed a slew of postjudgment motions, including motions to vacate and for an order to show cause, a motion to serve by mail, a motion to disqualify the judge, a motion to dismiss for forum non conveniens, and a motion to allow remote appearance. Rodrigue filed declarations and hundreds of pages of exhibits in support of his motions. He primarily urged the trial court to vacate the orders because he claimed he was unaware of the December 14 trial date until sometime in February 2024, when Valerie's North Carolina counsel alerted him to the entry of final orders in Washington. He claimed at that point, he "created a new profile," accessed the King County Superior Court dockets, and discovered that trial had occurred in his absence. The trial court entered seven separate orders denying Rodrigue's motions and Rodrigue appealed.

In October 2024, Rodrigue filed a motion to modify or terminate support, a motion for trial by affidavit, and another motion to vacate. Valerie filed a motion to correct non-substantive clerical errors in the decree. On October 25, 2024 the trial court entered an amended decree, and a "status order," indicating that, apart from

---

[4] Rodrigue later filed an amended notice of appeal designating additional orders.

entering an amended decree to correct scrivener's errors, it would not adjudicate the additional motions because of pending appellate review. Rodrigue filed a third notice of appeal. This court consolidated Rodrigue's appeals.

II

Many of the arguments in each of Rodrigue's appeals turn on his claim that the trial court violated his right to due process by entering final dissolution orders without ensuring proper notification of trial date.

Procedural due process requires notice and an opportunity to be heard. State v. Ralph Williams' Nw. Chrysler Plymouth, Inc., 87 Wn.2d 327, 335, 553 P.2d 442 (1976). For notice to meet these constitutional requirements, it must be " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " In re Marriage of Himes, 136 Wn.2d 707, 736-37, 965 P.2d 1087 (1998) (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). Such notice must give a party " 'sufficient notice to make an intelligent decision to appear or default.' " In re Marriage of Johnson, 107 Wn. App. 500, 504, 27 P.3d 654 (2001) (quoting Conner v. Universal Util, 105 Wn.2d 168, 172, 712 P.2d 849 (1986)).

A judgment entered without notice and an opportunity to be heard is void. State ex. rel. Adams v. Super. Ct., 36 Wn.2d 868, 872, 220 P.2d 1081 (1950). Courts are required to vacate void judgments. See In re Marriage of Chai, 122 Wn. App. 247, 254, 93 P.3d 936 (2004). But a judgment entered by a court with

both jurisdiction and inherent power is not void, even if there was some procedural irregularity in the process. Id.

Rodrigue does not dispute that he was notified by e-mail of the date, time, and location of the trial. In the months leading up to trial, Rodrigue received numerous documents by e-mail, including ER 904 exhibits, supplemental exhibits, Valerie's trial memorandum, a proposed parenting plan, and a motion to order his in-person attendance at trial. On November 28, 2023, following a hearing at which Rodrigue failed to appear, the court sent him by e-mail an "Order Adjusting Trial Date" that continued the trial "to the week of December 11, 2023." (Some capitalization omitted.) On the morning of December 11, 2023, the court's bailiff informed Valerie's counsel and Rodrigue by e-mail that the trial was not yet assigned. At the end of the day, the bailiff sent another e-mail to both parties, stating that Judge Suzanne Parisien would preside over the trial, which would begin at 9:00 a.m. on December 14, 2023. The next day, the parties received further instructions by e-mail from Judge Parisien's bailiff, and on December 13, 2023, the day before trial, they were provided with a Zoom link by e-mail. The record also indicates that the court sent final orders to both parties by e-mail on the date they were entered.

Rodrigue contends that notice of the trial date by e-mail was "ineffective and constitutionally defective" because (1) notice by mail is the "standard method allowed by law[]," (2) his current mailing address was in the court file; (3) unless affirmatively agreed to, service of pleadings by e-mail is not authorized by CR 5;

8

and (4) the significant interests at stake in dissolution proceedings warrant more formal notice. Days after Valerie filed her petition, the trial court authorized original service of process of the petition by mail (to a post office box in Indiana) and e-mail because Rodrigue's physical location was unknown. Rodrigue does not challenge the sufficiency of that original service. His right to due to process was protected. See 14A Douglas J. Ende, Washington Practice: Civil Procedure § 50:1 (3d ed. 2018) (service of process requirements are both strictly construed and enforced to protect a defendant's due process rights, but once an action is commenced, requirements are "far less rigorous").

CR 5 provides rules for service of pleadings subsequent to the initial complaint, but does not govern the manner in which the court communicates with parties. Here, Rodrigue appeared in the case and litigated extensively for approximately two years. The record shows that he frequently and consistently used the same e-mail address to correspond with opposing counsel, his own former counsel, and the court between 2021 and 2023. Rodrigue cites no authority prescribing the manner in which a court presiding over trial may direct the parties when and how to appear for trial proceedings, in the absence of which we decline to opine on the nature of such a standard. For, in any event, disseminating trial information using the e-mail address that Rodrigue used throughout the case was reasonably calculated to apprise him of that information.[5] Rodrigue fails to

---

[5] Rodrigue argues that the court should have surmised that his e-mail was not working properly because he had not responded to recent e-mail correspondence sent by the court or opposing counsel or initiated contact with the court for several months before trial. But, as the trial court noted, none of

9

establish constitutionally insufficient notice and therefore provides no justification for appellate relief from the trial court's rulings entered after trial.

III

In addition to his procedural argument, Rodrigue's first appeal raises claims as to substantive aspects of the final orders. In particular, Rodrigue challenges the (1) findings of contempt; (2) authority to enter a final child support order; (3) the calculation of his income; (4) the determination of ownership and distribution of real property; (5) the identification and assignment of value to the parties' assets; (6) the award of spousal support; (7) the judgment for past due support; and (8) the finding of intransigence and award of fees and costs to Valerie. But, as he acknowledges, Rodrigue did not participate in the trial and undisputedly presented no evidence, proposed no alternative findings or provisions, and did not challenge the evidence Valerie presented.

With limited exceptions, a party must raise an issue at trial in order to preserve it for appeal. RAP 2.5(a). The appellate court may refuse to review any claim of error that was not raised in the trial court. Fireside Bank v. Askins, 195 Wn.2d 365, 374, 460 P.3d 157 (2020). As explained, we discern no error—let alone manifest constitutional error—as to notice. See RAP 2.5(a)(3) (manifest error affecting a constitutional right may be raised for the first time on appeal).

Rodrigue's e-mails were returned to sender. And, given Rodrigue's extensive history of "gamesmanship" in the litigation, the trial court drew the equally reasonable inference that Rodrigue's silence was strategic and his claim that e-mail correspondence was not received at the time of delivery was "not credible."

Rodrigue's substantive claims are waived as a result of his failure to raise them in the trial court.

Similarly, although he did not appear at any hearings or submit evidence to demonstrate compliance with support obligations imposed in the court's temporary orders, Rodrigue challenges the contempt orders for the first time on appeal. Rodrigue claims the orders are void because Valerie did not comply with the applicable statute requiring personal service of a show cause order. RCW 26.18.050(1) authorizes a trial court to issue a show cause order to address a motion for contempt for a party's failure to comply with a support order. According to RCW 26.18.050(2), "[s]ervice of the order to show cause shall be by personal service, or in the manner provided in the civil rules of superior court or applicable statute."

It appears from the record that, at least twice, the trial court authorized service by mail or e-mail of contempt documents. Rodrigue evaded personal service throughout the case, because although ordered to do so, he consistently refused to disclose his residential address. He provided numerous mailing addresses in three different states during the litigation, but the addresses were either places of business where he was renting a mailbox or other places where he did not reside. Rodrigue does not challenge any order authorizing service by mail or e-mail. His claim of insufficient service does not suggest that he did not receive copies of contempt orders by mail or e-mail. Nor does he attempt to show that, at any point between June 2022 and April 2023, he asserted that any

11

contempt order was invalid because of insufficient of service of a show cause order. To the contrary, in disputing Washington's jurisdiction to proceed during the last appeal litigated in this court, which we decided by opinion issued on July 31, 2023, and by his efforts to preempt the Washington court's rulings in his North Carolina filings later deemed by that state's courts to be improper forum shopping, Rodrigue manifested awareness and receipt of the court's orders and findings of contempt. Rodrigue fails to establish manifest constitutional error or any other basis that warrants review of unpreserved errors related to the contempt orders.

Rodrigue challenges the April 2023 denial of his motion to dismiss Valerie's petition under the doctrine of forum non conveniens. It is transparent from the extreme facts of this case that Rodrigue's efforts to litigate in North Carolina were an exercise in improper forum shopping as that state's courts have also noted. In addition, Rodrigue fails to explain why his claim asserting a more convenient forum for trial is not moot now that the matter has been resolved. See e.g. Herrera v. Villaneda, 3 Wn. App. 2d 483, 491, 416 P.3d 733 (2018) (appeal of the trial court's determination that county was an inconvenient forum for action to establish parenting plan was moot after Oregon court resolved all parenting plan issues).

And finally, Rodrigue challenges the trial court's order assigning the case to Judge Parisien days before trial. However, he demonstrates no basis to review that administrative order given the trial court's inherent authority to control and manage its calendars, proceedings, and parties. See State v. Gassman, 175 Wn.2d 208, 211, 283 P.3d 1113 (2012).

12

IV

Rodrigue's second appeal arises from the multiple orders denying his postjudgment motions.[6]  Again, because we reject Rodrigue's arguments that he was deprived of constitutionally sufficient notice, we reject his claim that the trial court was required to vacate the orders under CR 60(b) on this basis.

Rodrigue's contention that the trial court was required to vacate the orders on the basis of fraud likewise fails.  To obtain relief under CR 60(b)(4), the party challenging the judgment must establish, by clear and convincing evidence, that fraud, misrepresentation or other misconduct prevented the party from fully and fairly presenting its case or defense.  Coogan v. Borg-Warner Morse Tec Inc., 197 Wn.2d 790, 821, 490 P.3d 200 (2021).  Rodrigue contends that Valerie failed to disclose, or accurately report, certain assets.  But the appropriate means to present evidence contrary to Valerie's contentions was by participating in good faith at trial on the merits.  Apart from the fact Rodrigue's claims of fraud are inadequately supported, he cannot voluntarily absent himself from the adversarial proceeding to determine disputed facts, and then obtain a second chance at a trial simply by arguing his opponent's evidence was not correct.  Rodrigue does not show that he was unable to present his case due to fraud.

---

[6] In addition to the July 2024 orders, Rodrigue's second notice of appeal designates for review the trial court's 2022 order confirming Washington state jurisdiction and a 2023 order renewing the DVPO.   It does not appear that either order is appealable in this matter, and in any event, Rodrigue's briefing in this appeal does not assign error to these orders.

As to the denial of his motion to disqualify the judge, Rodrigue claims the court erred by treating the motion as one under RCW 4.12.050 (any party appearing in superior court may disqualify a judge if notice is filed before the judge has made any discretionary ruling in the matter). Rodrigue's motion, however, expressly sought disqualification and RCW 4.14.040 and .050 provide the only mechanism to disqualify a judicial officer. And, nothing in the record suggests that the court failed to appreciate that Rodrigue's motion referenced the "appearance of fairness doctrine" and thus, also implicitly invoked a request for recusal on due process grounds. Rodrigue speculatively asserted that the court exhibited bias by, for instance, allowing Valerie to testify via Zoom at trial while denying his postjudgment motion to appear remotely, "enthusiastically" agreeing to attempt to expedite the entry of final orders, and engaging in a "strategy to delay" decisions on his postjudgment motions. Because these allegations did not constitute "[e]vidence of a judge's actual or potential bias," the court acted within its discretion in denying the motion. State v. Dominguez, 81 Wn. App. 325, 329, 914 P.2d 141 (1996); see Tatham v. Rogers, 170 Wn. App. 76, 87, 283 P.3d 583 (2012) (this court reviews a trial court's recusal decision for an abuse of discretion). Moreover, the trial transcript, including the court's statements about not recently being on a "family law rotation," provides no support for Rodrigue's assertion that he had no opportunity to present his case before a "competent tribunal." Parker v. United Airlines, Inc., 32 Wn. App. 722, 728, 649 P.2d 181 (opportunity to present one's position before a competent tribunal is a component of due process).

14

Rodrigue also contends that the court erred in denying his CR 60(b) motions without first issuing a mandatory show cause order under CR 60(e)(2). But Rodrigue mistakes the significance of CR 60(e)(2). The purpose of the notice requirement and the order directing parties to appear is to facilitate notice of the motion to the nonmoving parties. Here, the trial court denied Rodrigue's motion. It rejected his claims that he had "meritorious defenses" by pointing to allegedly undisclosed financial assets and claiming that Valerie knowingly proposed inflated income for purposes of determining the appropriate amount of support—all of which Rodrigue could have argued had he participated in trial. Rodrigue simply points to evidence that could have supported arguments in favor of different calculations or a different distribution of property. These arguments are not "defenses" to Valerie's petition, which sought to dissolve the marriage, distribute property, and establish parenting provisions. Rodrigue had notice of his own CR 60 motion, and the court reached and considered the merits of his motion. Rodrigue fails to show that he is aggrieved by any failure by the court to additionally issue an order giving notice to Valerie under CR 60(e)(2). Rodrigue fails to establish error.

Rodrigue claims that in denying his motion to allow remote appearances for "all proceedings" under the dissolution case, the court denied his right to meaningfully access the court. But Rodrigue fails to explain how he was prejudiced since the court considered his postjudgment motions without oral argument and he demonstrates no right to an oral presentation as to any of his

motions. See State v. Bandura, 85 Wn. App. 87, 92-93, 931 P.2d 174 (1997) ("[O]ral argument is a matter of discretion, so long as the movant is given the opportunity to argue in writing his or her version of the facts and law.").

And finally, Rodrigue claims that after denying the motion to appear remotely, the court was required to grant his postjudgment motion to dismiss on grounds of forum non conveniens. But again, Rodrigue does not explain why that request, seeking a more convenient forum to adjudicate the matter, was not moot after the trial court entered orders resolving all outstanding issues.

V

Although Rodrigue's third appeal challenges the October 2024 amended decree, he makes no specific arguments related to its amended provisions. Instead, he reiterates his claim that the January 2024 decree was void because it was entered after a trial without notice, and as a result, the amended decree is "equally null & void ab initio." Having already considered this argument, we need not address it further.

As to the "Status order re Motions Filed Post Notice of Court of Appeals Review," Rodrigue claims that RAP 7.2 did not prevent the trial court from ruling on his pending motions. He therefore requests that we (1) reverse the status order and (2) "use [our] powers under RAP 12.2 to reach the merits" of his pending motion to vacate. Contrary to his apparent belief, RAP 12.2 does not grant authority to act outside of our appellate capacity. RAP 12.2 governs "Disposition on Review," and provides that "the appellate court may reverse, affirm, or modify

16

the decision being reviewed and take any other action as the merits of the case and the interest of justice may require." The "other action[s]" contemplated are specifically with reference to the "decision being reviewed"—in this case, the status order. Nothing in RAP 12.2 allows us to set aside that order and rule on Rodrigue's motions in the first instance. And, as appellate review is now no longer pending, we need not reach any claim of error with respect to the interpretation of RAP 7.2.[7]

Affirmed.

Birk, J.

WE CONCUR:

Coburn, J.

---

[7] Rodrigue has filed numerous motions, petitions, and documents in conjunction with his appeals. Several of those motions have been passed to this panel, including multiple motions for sanctions, motions and emergency motions to stay the enforcement of trial court orders, petitions for writs of mandamus, and an objection and request for sanctions related to Valerie's supplemental designation of clerk's papers. Rodrigue has also filed a motion to modify a commissioner's June 18, 2025 ruling passing a petition for a writ of mandamus to the panel under RAP 17.7. All of Rodrigue's outstanding motions are hereby denied.